ISABEL PARASCO *v.* AETNA CASUALTY AND SURETY COMPANY ET AL.
(AC 16512)

Foti, Hennessy and Stoughton, Js.

Argued February 19—officially released May 19, 1998

*James T. Scully,* with whom, on the brief, was *Louis B. Blumenfeld,* for the appellants (defendants).

*Joanne Heslin Laverty,* for the appellee (plaintiff).

### Opinion

STOUGHTON, J. This is an appeal by the defendants[1] after a trial in which they admitted liability and the jury awarded $36,397.25 to the plaintiff for personal injuries sustained when she was struck by a motor vehicle. The vehicle was underinsured, and the plaintiff brought this action against her insurance carriers. The trial court concluded that the verdict was inadequate, set aside the verdict and ordered a new trial if the defendants

---

[1] The defendants are Aetna Casualty and Surety Company and the Automobile Insurance Company of Hartford.

did not agree to an additur of $72,500. The defendants did not agree to the additur and this appeal followed. We reverse the trial court's additur order and direct a judgment on the verdict.

The following facts are undisputed. On November 9, 1986, the plaintiff was walking from her parked automobile toward the entrance to an East Hartford movie theater when she was struck by a car. An ambulance took her to Hartford Hospital, where she was treated for various injuries and released.

At the trial, the jury heard conflicting testimony concerning the nature, extent and duration of the plaintiff's injuries. The plaintiff offered evidence that she had sustained injuries to her head, neck, hips and right shoulder. She complained of headaches and depression, and claimed a substantial amount in lost earnings. She sought treatment to alleviate her headaches. She received a diagnosis of subacromial bursitis and chronic pain of the right shoulder and residual swelling on the right thigh and hip area. One of her physicians estimated a 5 percent partial impairment of the right shoulder in June, 1995. In July, 1995, another of her physicians evaluated her headaches as a permanent condition and estimated that she was 80 percent disabled by headaches and that the condition resulted from the 1986 accident, which had aggravated an underlying condition. The plaintiff claimed that she was unable to resume her duties at the Aetna Insurance Company after she was injured, although she tried to go back to work in 1987. She obtained part-time work at a bakery but has not worked since 1993. She continued to see various physicians for neck and shoulder pain into 1995.

The jury also heard evidence that the plaintiff did not lose consciousness when she was struck by the car. The defendants called three of the plaintiff's treating physicians as witnesses. An orthopedic surgeon stated that the subacromial bursitis and shoulder pain were

not related to the 1986 accident and that there was no objective evidence to support any disability rating of the shoulder. The first neurologist to treat the plaintiff reported that her history showed migraines since age six and that he could not relate the migraine headaches to the head trauma. He also noted a degree of drug dependency that apparently stemmed from medication the plaintiff took to relieve her headaches. Another neurologist, to whom the plaintiff was referred by the orthopedic surgeon, opined that the plaintiff suffered rebound headaches resulting from overmedication and that her migraine headaches, which predated the 1986 accident, were the cause of her depression. The orthopedic surgeon also treated the plaintiff for a neck injury sustained in a motor vehicle accident on January 4, 1992. In addition to medical evidence contradicting many of the plaintiff's claims, the defendants brought before the jury various inconsistencies between her testimony and her earlier statements.

After the jury heard all of the evidence, the court delivered its charge and the plaintiff took no exceptions. The jury asked for and received additional instructions on economic and noneconomic damages. After the jury returned its verdict, the court instructed again on non-economic damages and sent the jury back to reconsider its verdict. The jury reported that it was satisfied with its verdict awarding the plaintiff $33,897.25 in economic damages and $2500 in noneconomic damages for a total verdict of $36,397.25. The trial court concluded that an award of $2500 in noneconomic damages shocks the conscience and that "it is totally inconsistent with the severity of the injuries suffered." The trial court found that "the plaintiff has proven substantial injuries for which she has been awarded inadequate damages" and that the verdict awarding substantial economic damages but negligible noneconomic damages was inherently ambiguous. The court thereupon granted an additur of $72,500 to the noneconomic damages. The

court ordered a new trial in the event that the defendants did not accept the additur.

Undoubtedly, it is the duty of the trial court "to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence." (Internal quotation marks omitted.) *Boyce* v. *Allstate Ins. Co.*, 236 Conn. 375, 382, 673 A.2d 77 (1996). Before the verdict may be set aside solely on the ground that damages are inadequate, the parties must be given an opportunity to accept an additur to the verdict of an amount the court deems reasonable. General Statutes § 52-216a.

On appeal, we review the action of the trial court in setting aside the verdict, recognizing that the decision of the trial court is entitled to great weight because it, like the jury, has seen and heard the witnesses. We will not disturb the exercise of that discretion in the absence of clear abuse. See *Jacobs* v. *Goodspeed*, 180 Conn. 415, 416, 429 A.2d 915 (1980).

Despite the deference due the action of the trial court, it is a fundamental principle that the parties have "a constitutional right to have factual issues determined by the jury. This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 112, 663 A.2d 398 (1995). The amount of damages awarded is a matter peculiarly within the province of the jury, as is the credibility of witnesses and the weight to be accorded their testimony. Id.

"The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the

conclusion that the jury [was] influenced by partiality, mistake or corruption." (Internal quotation marks omitted.) Id., 114.

On issues where the evidence allows room for reasonable differences of opinion among fair-minded people, if the conclusion of the jury is one that reasonably could have been reached, it must stand even though the trial court might have reached a different result. See *Jacobs* v. *Goodspeed*, supra, 180 Conn. 417. "A verdict should not be set aside . . . where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." *Salaman* v. *Waterbury*, 44 Conn. App. 211, 214, 687 A.2d 1318, cert. granted on other grounds, 240 Conn. 921, 692 A.2d 816 (1997).

Here, although there was evidence from which the jury might have found that the plaintiff suffered substantial injuries, there was other evidence conflicting with the plaintiff's claims. The jury was not compelled to accept the plaintiff's claims as to the severity of her injuries, no matter how persuasive that evidence might have seemed to the trial court. The difference between the amounts of the economic and the noneconomic damages awarded creates no inherent ambiguity. A fact finder is not required to award noneconomic damages simply because economic damages are awarded. See *Childs* v. *Bainer*, supra, 235 Conn. 121. It is clear that the personal injury claims were seriously disputed, and the jury award for noneconomic damages demonstrates that the jury was not overwhelmingly persuaded by the plaintiff's evidence.

The order of the trial court is reversed and the case is remanded with direction to reinstate the jury's verdict and to render judgment thereon.

In this opinion the other judges concurred.