WHIG TURNER *v*. PATRICIA PASCARELLI ET AL.
(AC 25370)
(AC 25371)

Schaller, Harper and Peters, Js.

Argued February 17—officially released May 3, 2005

*Jack G. Steigelfest*, with whom, on the brief, was *Constance L. Epstein*, for the appellants (defendants).

*Michael W. Levy*, for the appellee (plaintiff).

*Opinion*

PETERS, J. In this personal injury case, the only issue is whether the trial court properly ordered an additur to supplement a jury verdict in favor of the injured party. Because the tortfeasor did not agree to the additur, the court set the jury verdict aside and ordered a new trial. In the tortfeasor's appeal, she maintains that the additur was an abuse of the court's discretion. We agree and reverse the judgment of the trial court.

The plaintiff, Whig Turner, filed a complaint alleging that the named defendant, Patricia Pascarelli,[1] had driven her car negligently and had collided with his car. As a result, he claimed, she caused him to suffer severe personal injuries. Despite the defendant's denial of the plaintiff's claim, the jury returned a plaintiff's verdict

---

[1] Pascarelli is now named Patricia Pascarelli-Derivan. The plaintiff also sought damages from General Motors Acceptance Corporation, which had leased to Pascarelli the car that she was driving at the time of the accidents at issue. Because the plaintiff's claim against General Motors Acceptance Corporation depends entirely on the success of his claim against Pascarelli, we will refer to her in this opinion as the defendant.

awarding him $4323.77, consisting of $3923.77 in economic damages and $400 in noneconomic damages.

The plaintiff then filed a motion to set the verdict aside unless the parties agreed to an additur in an amount to be set by the trial court. Although the court initially denied the motion, on reargument, it ordered an additur of $3000. Because the defendant refused to accept the additur, the trial court rendered a judgment setting the verdict aside and ordering a new trial. The defendant has appealed.

We must decide two questions. First, what is the proper standard for review of an additur? Second, in light of that standard, did the court properly order an additur in this case? Our answers to these questions lead us to conclude that the judgment of the trial court must be reversed.

I

THE STANDARD

In *Wichers* v. *Hatch*, 252 Conn. 174, 181–89, 745 A.2d 789 (2000), our Supreme Court set out the standard that governs appellate review of a trial court's decision that a jury's award of damages is inadequate. In such a case, a trial court has some discretion to set the jury verdict aside and to order a new trial unless the parties agree to a court specified additur to the amount awarded by the jury. Id., 188–89.

*Wichers* reflects the two competing jurisprudential principles that additurs bring into play. On the one hand, deference to the ruling of the trial court is warranted because that court, having observed the trial proceedings in their entirety, is in a better position than an appellate court to assess the credibility of the witnesses and the appropriate weight to be accorded their testimony. See id., 186–87. On the other hand, deference is problematic because the trial court's exercise of its

discretion impairs the litigants' constitutional right to designate a jury, rather than a court, to be the fact finder in their case. Id., 188.[2] Indeed, the Supreme Court of the United States has declared, as a matter of federal law, that *any* additur violates the right to a jury trial that is guaranteed by the seventh amendment to the United States constitution. *Dimick* v. *Schiedt*, 293 U.S. 474, 476, 482–83, 485–87, 55 S. Ct. 296, 79 L. Ed 603 (1935).

On their face, these two jurisprudential principles are difficult to reconcile. To find the proper balance between them, *Wichers* holds that "a case-specific standard should apply to the instance in which a party seeks to have a verdict set aside on the basis that it is legally inadequate." *Wichers* v. *Hatch*, supra, 252 Conn. 181. For more than seventy-five years,[3] judicial decisions have reflected the wisdom of legal realism that case law should reflect the factual circumstances under which the controversy between the parties arose.[4] In that sense, every judicial ruling is case specific. *Wichers* must, therefore, have intended something more. We read *Wichers* as an instruction to a trial court specifically to identify the facts of record that justify the

---

[2] As counsel aptly observed at oral argument in this court, appellate courts tend to rely on the first principle when they uphold an additur and on the second when they reverse.

[3] See *McPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 391, 111 N.E. 1050 (1916) (cautioning that evolving "needs of life in a developing civilization require" courts to apply legal principles with precision to facts of each case); see also *Minnesota* v. *United States Steel Corp.*, 438 F.2d 1380, 1384 n.11 (8th Cir. 1971) (observing that " '[t]he predictable element in it all is what courts have done in response to the stimuli of the facts of the concrete cases before them' ").

[4] See B. Cardozo, The Nature of the Judicial Process (1921) p. 127 (noting that "[l]aw and obedience to law are facts confirmed every day to us all in our experience of life. If the result of a definition is to make them seem to be illusions, so much the worse for the definition; we must enlarge it till it is broad enough to answer to realities. The outstanding truths of life, the great and unquestioned phenomena of society, are not to be argued away as myths and vagaries when they do not fit within our little moulds.").

extraordinary relief of additur and as an instruction to an appellate court to inquire whether the facts so identified justify the trial court's exercise of its discretion to set a jury verdict aside because of its perceived inadequacy.

## II

## APPLICATION OF THE STANDARD

Under *Wichers*, it is not enough to base an additur on a conclusory statement that a jury award was "almost shocking," as the court found in this case. The question, therefore, is whether the court elsewhere articulated a sufficient factual basis for its decision to order an additur.

The court based its additur of $3000 on two reasons. Its first reason was that because the jury awarded the plaintiff a sum compensating him for all his medical expenses for a period of seven months, the jury should have awarded him more than $400 in noneconomic damages because of his pain and suffering throughout that period.[5] The second reason was that, as far as the court could recall, there was no evidentiary linkage between the plaintiff's injuries in this case and those he had sustained in another accident that had occurred fourteen months earlier. The court denied the defendant's motion for articulation.[6]

---

[5] This finding by the trial court stands in sharp contrast to its reasoning when it denied the plaintiff's prior motion for reconsideration of the jury verdict. At that time, the court observed that "if a person . . . has these economic damages and has, let's say, surgery or something that—where [his or her] recovery has obvious pain to it . . . that would be an appropriate instance for the court to either set the verdict aside or send the jury back to reconsider. *This is not that situation.*" (Emphasis added.)

[6] At oral argument, the defendant's counsel informed this court that he had not filed a motion for review of this denial.

## A

## Pain and Suffering

The plaintiff injured his back on November 4, 1999, as a result of an accident in which the defendant negligently damaged the plaintiff's car. The damage to the plaintiff's car was minor.[7] At trial, the parties disputed the severity and the duration of the pain and suffering that the plaintiff suffered as a result of the accident.

At the scene of the accident, the plaintiff complained of dizziness and a headache, but not of a backache. An emergency room physician diagnosed him as having a "slight concussion." Four days later, the plaintiff was seen by his primary physician, Gary P. Cohen, who confirmed the diagnosis of "slight concussion." Cohen gave the plaintiff a note releasing him from work for the following three days. Although Cohen's record of this consultation does not mention "backache," he referred the plaintiff to an orthopedic surgeon, Steven E. Selden, "for evaluation."[8]

The orthopedist saw the plaintiff on November 11, 1999, one week after the accident. This was the first time that the plaintiff complained of back pain. The orthopedist found that the plaintiff had suffered a strain of his back and directed him to obtain treatment by a physical therapist. He nonetheless approved the plaintiff's return to work on the following Monday, November 15, 1999.

During the trial, the plaintiff testified that he suffered neck and back pain that was severe and ongoing. Nonetheless, despite his back problem, he was able to return to his work as a security guard. In 2002, however, at a

---

[7] The only damage sustained by the plaintiff's car was to the front black strip of the front bumper. As a result, the bumper had to be replaced.

[8] The orthopedist had previously seen the plaintiff in conjunction with an accident that had occurred in August, 1998.

new work site, he found it very painful to work. He retired three weeks later.

The orthopedist saw the plaintiff at monthly intervals until June 8, 2000. The plaintiff repeatedly complained of pain in his neck and his back, but in various degrees of severity. He was "slightly improved" in December, 1999, but his discomfort was "increasing" in February, 2000. By March, 2000, the pain was "not constant." In May, 2000, he had a "relapse" because he had been digging in his garden. Throughout, the orthopedist continued to prescribe a program of physical therapy and exercise "because there was little else . . . to be done."

Although the plaintiff initially complied with the orthopedist's directive that he obtain physical therapy, the record contains no evidence that he sought such therapy after January 24, 2000. At trial, he testified that the therapy had not helped him to feel better. This testimony was inconsistent with statements contained in records maintained by the therapist. These records show that, during January therapy sessions, the plaintiff reported continued improvement in his physical condition. On January 29, he told his therapist that he was feeling "great." The therapist's notes indicate that he had completed that day's therapy program "with no difficulty." In response to inquiry at trial into this apparent discrepancy, the plaintiff testified that he could not recall any conversation with any therapist at any time.

In light of this evidence, the jury reasonably might have found that the plaintiff's backache caused him pain that was variable and intermittent. The jury also might have found that the plaintiff had contributed to his problem by failing to follow a recommendation for further physical therapy in February, 2000, and by engaging in activities, such as gardening, that he should have known would not be good for his back.

Explaining the reasoning for its additur, the court seems to have assumed that the plaintiff had been in significant pain throughout the period of his medical treatment. The evidence of record, however, would support a different assessment of the plaintiff's pain and suffering, an assessment that his pain was intermittent and variable rather than constant and severe. "When determining whether to order an additur, the court should not assume that the jury made a mistake, but should suppose that the jury did exactly what it intended to do." *Weiss* v. *Bergen*, 63 Conn. App. 810, 814, 779 A.2d 195, cert. denied, 258 Conn. 908, 782 A.2d 1254 (2001).

If the trial court nonetheless was persuaded that the jury should have found that the plaintiff's back injury was severe throughout the relevant time period, the court could not stop there. *Wichers* obligated the court to make an express "case-specific" statement of its reasoning. *Wichers* v. *Hatch*, supra, 252 Conn. 181. Pursuant to *Wichers*, we are persuaded that the court abused its discretion by ordering an additur without identifying the part of the record that supported its determination that an award of $400 in noneconomic damages was unreasonable under the circumstances of this case.

The plaintiff argues, however, that we have no authority to set the trial court's judgment aside because we are bound by this court's recent decision in *Elliott* v. *Larson*, 81 Conn. App. 468, 840 A.2d 59 (2004). Like this case, *Elliott* involved the granting of an additur based on a trial court's decision that a jury had failed to compensate the injured party for his pain and suffering. Id., 477. Like this case, the tortfeasor appealed from the judgment of a trial court setting aside a jury verdict because the tortfeasor did not agree to an additur. Id., 471. In *Elliott*, this court affirmed the judgment of the trial court. Id., 477–78.

In *Elliott*, the trial court justified its additur through its analysis of the jury verdict that awarded the injured plaintiff *no* noneconomic damages while, at the same time, awarding him economic damages covering not only his medical expenses but also his lost wages and his overtime. Id., 477. The trial court reasoned that "[t]he award of the [the injured party's] lost wages must necessarily have flowed from the conclusion that he was injured, suffered pain and could not work. The failure to award [any] noneconomic damages is inconsistent with the conclusion of injury and the award of lost wages." (Internal quotation marks omitted.) Id. We agreed.

This case is different. This jury (1) awarded *some* noneconomic damages and (2) awarded only the *medical* expenses that the plaintiff had incurred. The plaintiff returned to work eleven days after the accident. He continued to work throughout that year, during the following year and, in part, in the year after that. His complaint did not include a claim for lost wages.

We are not persuaded that a jury that reimburses an injured party's medical expenses without awarding him compensation for lost wages is required to make an award for pain and suffering more generous than the one made in this case. The evidence of the extent of the plaintiff's pain and suffering was not unequivocal. In contrast to *Elliott*, the trial court in this case failed to identify any mistake in the jury's verdict.

In sum, applying the *Wichers* standard to the circumstances of this case, we conclude that the trial court abused its discretion in concluding that the jury's award of medical damages required the jury to find that the plaintiff suffered compensable pain throughout the period of his medical treatment. The court did not identify any part of the trial record that supported its reasoning or, contrariwise, that the jury should have

disregarded as inherently incredible. It did not identify any logical inconsistency in the jury's verdict. Judicial disagreement with a jury's assessment of the extent of a plaintiff's injury is not, in our view, a sufficient basis for an additur.

## B

### The Prior Accident

Even if the jury had agreed with the plaintiff's own assessment of the extent to which his back strain was painful, the jury might nonetheless have awarded only limited noneconomic damages because it might have found that the plaintiff's injury in a prior automobile accident contributed to his discomfort after the present accident. The prior accident occurred on August 15, 1998. The trial court found, however, that "in this case, there was no evidence that [the plaintiff] carried over any residual from the prior accident. I don't think there was any evidence of that." We disagree.

After the 1998 accident, the plaintiff was examined by emergency room personnel who diagnosed him as suffering from pain in his back and neck. Thereafter, he was examined and treated for pain in his neck and his lower back by the same orthopedist who treated him in the present case. In 1998, as in this case, the plaintiff was advised to seek physical therapy. Throughout this period, he continued to work.

In the present case, the plaintiff testified at trial that his back was fully functional by the time that the present accident occurred. Whatever residual pain he continued to experience he attributed to the 1998 *neck* injury rather than to his *back* injury. The evidence of record was, however, more equivocal.

After finishing his physical therapy in 1998, the plaintiff told his therapist that his back was only 50 percent

improved. In May, 1999, in answering interrogatories concerning his 1998 accident, he stated that his back was not 100 percent better.

Furthermore, at trial, the plaintiff's testimony was inconsistent. At one juncture, he testified that his back was only 75 percent better at the time of the present accident. True, he subsequently retracted that testimony, claiming to have been confused by the questions asked by the defendant's counsel. The jury was not obligated to accept that explanation. The jury also might have been troubled that the plaintiff had failed to reveal the occurrence of the 1998 accident when he filled out a medical form in connection with his 1999 physical therapy.

In sum, the record at trial demonstrates that the trial court was mistaken in its recollection that the jury had not been presented with *any* evidence at trial linking the plaintiff's 1998 accident to his 1999 accident. True, the evidence was not overwhelming. Observing the demeanor of the witnesses, however, the jury had primary responsibility for resolving the conflicts in the testimony that was presented to it. *Wichers* v. *Hatch*, supra, 252 Conn. 189. Alternatively, the jury might have found that the 1998 accident cast a sufficient shadow over the 1999 accident to raise a reasonable doubt about whether the plaintiff had met his burden of proving the extent to which the present defendant bore responsibility for the plaintiff's back injury.

### III

### CONCLUSION

Our review of the evidence of record persuades us that the jury reasonably might have decided that the plaintiff's noneconomic damages were no greater than $400. The jury reasonably might have been persuaded that the injuries that the plaintiff received from the

1999 accident were not as extensive as the trial court apparently found them to be. Alternatively, the jury might have been persuaded that the back pain that the plaintiff experienced after the 1999 accident was attributable, in part, to the injuries caused by the 1998 accident.

In light of the circumstances of this case, the trial court abused its discretion in awarding an additur. "[I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work their will." *Jacobs* v. *Goodspeed*, 180 Conn. 415, 419, 429 A.2d 915 (1980); *Schettino* v. *Labarba*, 82 Conn. App. 445, 449, 844 A.2d 923 (2004).

The judgment is reversed and the case is remanded with direction to render judgment in accordance with the verdict of the jury.

In this opinion the other judges concurred.