# TONI M. SMITH *v.* ROBERT A. LEFEBRE
## (AC 25542)

Schaller, McLachlan and Harper, Js.

Argued September 19—officially released November 29, 2005

*Mark J. Sheehan,* for the appellant (defendant).

*Charlotte Croman,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Robert A. Lefebre, appeals from the judgment of the trial court, which set aside the jury verdict and ordered a new trial on the issue of damages after the defendant refused to accept a court-ordered additur. On appeal, the defendant claims that the court improperly ordered the additur in the absence of any reason to determine that the verdict was against the weight of the evidence, shocked the sense of justice or was based on partiality, prejudice, mistake or corruption. We reverse the judgment and remand the case to the trial court with direction to reinstate the jury verdict.

The jury reasonably could have found the following facts. On June 19, 2000, the plaintiff, Toni M. Smith, who was returning from an appointment, was stopped at a red traffic signal at an intersection in Old Saybrook. As the signal turned green, she advanced two to three car lengths before she felt a "bump" in the rear of her vehicle. According to the defendant, after the signal had changed, he began accelerating his vehicle, and his attention was diverted momentarily. He attempted to stop when he saw the plaintiff's vehicle, but estimated that he collided with her vehicle while traveling approximately ten to fifteen miles per hour. As a result, the plaintiff's vehicle sustained some damage.[1] After checking on the plaintiff's condition and calling 911, the defendant and another individual pushed her vehicle to the side of the road.

The plaintiff commenced the present action on August 23, 2001. In her revised complaint she alleged

---

[1] The plaintiff testified that her rear bumper and muffler were damaged in the accident.

both negligence and recklessness on the part of the defendant. The defendant admitted negligence but disputed the claim of recklessness, as well as the severity and extent of the plaintiff's claimed injuries. Following the conclusion of the plaintiff's case-in-chief, the defendant successfully moved for a directed verdict with respect to the recklessness count, leaving only the question of damages for the jury.

The jury awarded the plaintiff $5500 in economic damages and no noneconomic damages.[2] The plaintiff filed a motion for additur, claiming that the jury's verdict of zero noneconomic damages was not supported by the evidence and was ambiguous pursuant to General Statutes § 52-228b. The court held a hearing on August 25, 2003, and notified the parties two days later of its decision granting the plaintiff's motion. Acknowledging that the defendant disputed the extent of the plaintiff's injuries, the court stated: "The court has reviewed the evidence and the verdict. It has used all its experience, knowledge of human nature, events and motivation to test the evidence presented. In the exercise of this knowledge, the court finds that the verdict is so clearly against the weight of the evidence so as to indicate that the jury did not correctly apply the law to the facts. The verdict shocks the sense of justice and leads this court to conclude that the jury was influenced by partiality, prejudice, mistake or corruption. The court finds no reasonable basis in the evidence for the jury's verdict."[3]

---

[2] General Statutes § 52-572h (a) provides in relevant part: "For the purposes of this section: (1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering . . . ."

[3] We recently held that when ruling on a motion for additur, a court should "specifically . . . identify the facts of record that justify the extraordinary relief of additur" and that a reviewing court will "inquire whether the facts

The court awarded an additur of $7500 in noneconomic damages and sua sponte ordered a remittitur of $16 in economic damages so that the award corresponded to the evidence. The court further ordered, in accordance with § 52-228b, that if the parties did not accept the additur and the remittitur, the verdict would be set aside and a new trial granted, limited to the issue of damages. The defendant did not accept the additur. This appeal followed.

On appeal, the defendant claims that the court abused its discretion in granting the motion for additur and in setting aside the verdict. Specifically, the defendant argues that the court's conclusion regarding the sufficiency of the verdict was improper.[4] We conclude that the court abused its discretion in granting the additur.

so identified justify the trial court's exercise of its discretion to set a jury verdict aside because of its perceived inadequacy." *Turner* v. *Pascarelli*, 88 Conn. App. 720, 723–24, 871 A.2d 1044 (2005).

[4] The plaintiff argues that we should not reach the merits of the defendant's claim on appeal because the record is not adequate for review, as it is not clear why the court concluded that the verdict "shocked the conscience" and did not explain what constituted the court's "own experience and knowledge" that led to the award of the additur. As the appellant, the defendant had the burden of providing an adequate record. See *Chyung* v. *Chyung*, 86 Conn. App. 665, 676, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005); Practice Book § 61-10. The defendant did not file a motion for articulation. See Practice Book § 66-5. Although an articulation may have been helpful, we do not believe one was necessary in the present case. See *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 815 n.27, 873 A.2d 965 (2005). The court's decision does not contain the type of ambiguity necessitating articulation. Furthermore, it is our function to review the actions of the court, and this cannot be done in a vacuum. "The evidential underpinnings of the verdict itself must be examined." (Internal quotation marks omitted.) *Wallace* v. *Haddock*, 77 Conn. App. 634, 638, 825 A.2d 148 (2003).

In *Wallace*, we concluded that the record was inadequate. Id., 639. In that case, however, the appellant not only failed to seek an articulation, but also did not provide any transcripts from the proceedings from which we could review the evidentiary basis of the jury's verdict. Id. In the present case, the defendant has provided us with the necessary basis to review both the jury verdict and the decision of the court to grant the plaintiff's motion. We conclude, therefore, that the record is adequate and that an articulation was not necessary.

As a preliminary matter, we set forth certain background information that will facilitate our discussion before identifying the applicable legal principles and standard of review. Our starting point is the seminal case of *Wichers* v. *Hatch*, 252 Conn. 174, 745 A.2d 789 (2000) (en banc). In *Wichers*, our Supreme Court expressly overruled the per se rule set forth in *Johnson* v. *Franklin*, 112 Conn. 228, 152 A. 64 (1930), that an award limited solely to economic damages was inadequate and must be set aside. *Wichers* v. *Hatch*, supra, 181. "Rather than decide that an award of only economic damages is inadequate as a matter of law, *the jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it*. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue. *That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do*." (Emphasis added.) Id., 188–89.[5]

We now identify certain principles with respect to the function of the jury as the trier of fact. It is axiomatic

[5] This court recently explained the necessity for this case-by-case standard. "*Wichers* reflects the two competing jurisprudential principles that additurs bring into play. On the one hand, deference to the ruling of the trial court is warranted because that court, having observed the trial proceedings in their entirety, is in a better position than an appellate court to assess the credibility of the witnesses and the appropriate weight to be accorded their testimony. . . . On the other hand, deference is problematic because the trial court's exercise of its discretion impairs the litigants' constitutional right to designate a jury, rather than a court, to be the fact finder in their case. . . . Indeed, the Supreme Court of the United States has declared, as a matter of federal law, that any additur violates the right to a jury trial that is guaranteed by the seventh amendment to the United States constitution. *Dimick* v. *Schiedt*, 293 U.S. 474, 476, 482–83, 485–87, 55 S. Ct. 296, 79 L. Ed. 603 (1935)." (Citations omitted.) *Turner* v. *Pascarelli*, supra, 88 Conn. App. 722–23.

that "[t]he amount of damages awarded is a matter peculiarly within the province of the jury . . . ." (Internal quotation marks omitted.) *Weiss* v. *Bergen*, 63 Conn. App. 810, 813, 779 A.2d 195, cert. denied, 258 Conn. 908, 782 A.2d 254 (2001).[6] Moreover, there is no obligation for the jury to find that every injury causes pain, or the amount of pain alleged. *Lidman* v. *Nugent*, 59 Conn. App. 43, 46, 755 A.2d 378 (2000); see also *Vajda* v. *Tusla*, 214 Conn. 523, 538, 572 A.2d 998 (1990). Put another way, "[i]t is the jury's right to accept some, none or all of the evidence presented. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Weisenberg*, 79 Conn. App. 657, 663–64, 830 A.2d 795, cert. denied, 266 Conn. 932, 837 A.2d 806 (2003).

We now explain our standard of review. "[I]t is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption. . . . [A] court's decision to set aside a verdict and to order an additur . . . is entitled to great weight and every reasonable presumption should be given in favor of its correctness.

---

[6] "Although damages often are not susceptible of exact pecuniary compensation and must be left largely to the sound judgment of the trier . . . [this] situation does not invalidate a damage award as long as the evidence afforded a basis for a reasonable estimate by the [trier] of that amount. . . . Mathematical exactitude in the proof of damages is often impossible . . . ." (Internal quotation marks omitted.) *Santa Maria* v. *Klevecz*, 70 Conn. App. 10, 17–18, 800 A.2d 1186 (2002).

. . . In determining whether the court abused its discretion, therefore, we decide only whether, on the evidence presented, the court reasonably could have decided that the jury did not fairly reach the verdict it did. To do so, we must examine the evidential basis of the verdict itself . . . ." (Citations omitted; internal quotation marks omitted.) *Snell* v. *Beamon*, 82 Conn. App. 141, 145–46, 842 A.2d 1167 (2004); see also *Elliott* v. *Larson*, 81 Conn. App. 468, 476–77, 840 A.2d 59 (2004).

In the present case, although the defendant admitted liability for negligence, the nature and extent of the plaintiff's injuries were disputed aggressively at trial. The plaintiff testified that after the collision, she felt a "hot shock" up the back of her neck. She then exited the vehicle and examined the damage. She did not suffer any cuts or bruises. The vehicle's air bags did not deploy. On the way home, her back felt "a little achy," and she went to a medical provider for an examination. She subsequently saw her primary care provider, Edward Winokur, who suggested physical therapy to treat her muscle tension, which was causing her headaches and affecting her vision. The physical therapy helped the plaintiff's muscle tension, but was ineffective in treating the limited range of motion in her neck. Ultrasound treatments and traction provided similar results.

The plaintiff's physical therapist recommended that she consult a chiropractor. In September, 2000, the plaintiff started receiving treatments from James Milone. Those treatments, according to the plaintiff, temporarily relieved her symptoms, but did not permanently restore her to her preaccident condition.

The plaintiff also was treated by an orthopedist, Steven Luster. Luster offered a treatment option of a cortisone shot, which she refused. Luster rated her as having a 5 percent permanent partial disability. The plaintiff

also was examined by Edward Tucker, a neurologist. She claimed to have selected Tucker after looking in a telephone directory. Tucker agreed that the plaintiff had suffered an injury to her cervical spine, which caused the problems in her arm, namely, pain in the elbow and a loss of sensation in the arm. Tucker stated that as a result of the accident, her ulnar nerve had been stretched. Tucker advised the plaintiff to avoid excessive stretching or pulling and to refrain from lifting heavy objects over her head. He rated her as having a 7 percent permanent partial disability.

The plaintiff testified that she remains unable to sit for long periods of time while at work, that she cannot carry heavy items, shovel, rake or vacuum stairs and that she can no longer jog or exercise at a gym as she did prior to the accident. The plaintiff also testified that Tucker had told her that she suffers from a herniated disk, meaning that the disk was "bulging between the vertebrae" and that it may require surgery in the future.

Counsel for the defendant vigorously cross-examined the plaintiff. The plaintiff admitted that she had missed work only on the afternoon of the accident and the next day, and that she did not make a claim for lost wages. The plaintiff also admitted that she did not strike anything inside the car at the time of the accident, with the possible exception of the headrest. She conceded that following the accident, she continued to train with weights at a gym.

During cross-examination, the plaintiff again expressly stated that she had selected Tucker from a list of providers in a telephone directory because he was a specialist in neurology and sports medicine and was located close to her home. At that point, the defendant introduced a letter, dated July 16, 2001, from the plaintiff's attorney to Tucker. The letter indicated that

the plaintiff had been sent to Tucker on the recommendation of her attorney.[7]

Other witnesses for the plaintiff included her mother, Antonia Smith, who testified that the plaintiff limited her physical activities following the accident. William Olsen, a coworker of the plaintiff for sixteen years, stated that following the accident, he helped her by carrying heavy bins. The plaintiff's boyfriend, Steven J. Barry, also described the changes in the plaintiff as a result of the accident, namely, decreased physical activity.

Tucker's deposition was read to the jury. Tucker stated that the plaintiff's X ray, taken on the day of the accident, appeared normal. Nerve conduction studies revealed nothing of major significance. Tucker was unable to connect definitively the numbness in the plaintiff's arm to the accident, although he did note that she did not begin experiencing that discomfort until after the accident. Tucker also explained that the difference between a bulging disk and a herniated disk was one of degree, with the latter being more severe. He diagnosed the plaintiff with a small bulge, rather than a herniated disk, as the plaintiff had testified. With respect to the bulging disk, he stated that it was not a consistent condition and that surgery was not foreseeable. He concluded that a magnetic resonance imaging procedure done on January 18, 2001, indicated "nothing really significant." Tucker also concluded that there was no atrophy or weakness in the plaintiff's left arm, as sometimes is found when a nerve has been injured or irritated.

---

[7] The letter stated: "Dear Dr. Tucker, I recently sent [the plaintiff] to you because she was still experiencing pain as a result of an auto accident and had seen Dr. Luster, the orthopedist. When you can determine her prognosis and permanent partial disability rating, would you please inform me as soon as possible? Thank you. Yours truly, Charlotte Croman."

There was evidence before the jury that the parties were involved in a low speed collision in which the air bags in the plaintiff's vehicle were not deployed. The plaintiff did not suffer any cuts or bruises, and was able to leave her vehicle and walk around it to examine the damage. The jury could have concluded from those facts that the motor vehicle accident was relatively minor. She did not miss any appreciable amount of time from work. The plaintiff's claim that she selected Tucker out of the telephone directory, and thus her credibility before the jury, was severely damaged by the letter sent from her attorney. Furthermore, on the basis of the evidence adduced during the trial, the jury could have concluded that the plaintiff embellished or exaggerated both the nature and the extent of her injuries. For example, there were conflicting descriptions regarding her back injury, whether it was a bulging or herniated disk, and whether surgery would be needed. Additionally, we note that the witnesses who testified for the plaintiff regarding the extent of her injuries were all close friends or family members.

In the present case, in light of the conflicting evidence with respect to the issue of damages, it was the jury's task to determine the credibility of the evidence. See *Schettino* v. *Labarba*, 82 Conn. App. 445, 449, 844 A.2d 923 (2004). In light of the evidence, it was reasonable for the jury to award zero noneconomic damages. See generally *Lidman* v. *Nugent*, supra, 59 Conn. App. 46 (given minimal nature of accident, no amount of monetary award would be so extremely low as to shock conscience). Moreover, the presence of such conflicting evidence curtailed the court's authority to replace the jury's damage award with its own. See *Schettino* v. *Labarba*, supra, 450.

As this court stated in *Parasco* v. *Aetna Casualty & Surety Co.*, 48 Conn. App. 671, 676, 712 A.2d 433 (1998), "[t]he jury was not compelled to accept the plaintiff's

claims as to the severity of her injuries, no matter how persuasive that evidence might have seemed to the trial court." See *Hackling* v. *Casbro Construction of Rhode Island,* 67 Conn. App. 286, 786 A.2d 1214 (2001). Under the facts and circumstances of the present case, the evidence was sufficient to allow "room for reasonable differences of opinion among fair-minded people" and, therefore, even though the trial court may have reached a different conclusion, the jury's verdict must stand. (Internal quotation marks omitted.) *Weiss* v. *Bergen,* supra, 63 Conn. App. 813; see also *Turner* v. *Pascarelli,* supra, 88 Conn. App. 729. Of course, "[a] verdict should not be set aside . . . where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) *Weiss* v. *Bergen,* supra, 814. When the court substituted its opinion for that of the jury, the defendant's constitutional right to have issues of fact decided by a jury was violated. See *Visoky* v. *Lavoie,* 64 Conn. App. 501, 506, 779 A.2d 1284 (2001). We must conclude, therefore, that the court improperly exercised its discretion in granting the motion for additur and ordering a new trial.

The judgment is reversed and the case is remanded with direction to reinstate the jury verdict and to render judgment accordingly.

In this opinion the other judges concurred.