MARIA SILVA ET AL. *v.* WALGREEN COMPANY ET AL.
(AC 30625)

Gruendel, Robinson and Thompson, Js.

Argued February 4—officially released April 27, 2010

*Sandra Rachel Stanfield*, with whom, on the brief, was *David A. Estabrook*, for the appellants (defendants).

*Thomas J. Weihing*, with whom, on the brief, was *Janice L. Rosenfeld*, for the appellee (named plaintiff).

ROBINSON, J. The defendants[1] appeal from the trial court's judgment setting aside the jury's verdict[2] in favor of the plaintiff Maria Silva.[3] On appeal, the defendants claim that the court abused its discretion by (1) granting the plaintiff's motion for additur and (2) ordering a new trial as to damages only. We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. On or about July 31, 2002, the plaintiff, who suffered from chronic sinusitis, sought treatment from her physician, Edward M. Lane, for a sinus infection. Following his examination of the plaintiff, Lane gave her a prescription, which she had filed at the Walgreen pharmacy at 2251 Main Street in Bridgeport (pharmacy). The plaintiff took a dose of the medication[4] and proceeded to her place of employment. The plaintiff claimed that at approximately 3:30 p.m. she experienced fatigue, dizziness, sweating and burning in her chest, which became progressively worse. She felt somewhat better by 8 p.m. At approximately 9 p.m., the plaintiff received a telephone call from her daughter,

---

[1] The defendants are Walgreen Company, Walgreen Eastern Company, Inc., and Walgreen New England Company.

[2] General Statutes § 52-228a provides: "In any jury case where the court orders a decrease in the amount of a judgment or *an increase in the amount of the judgment,* the party aggrieved by the order of remittitur or additur may appeal as in any civil action. The appeal shall be on the issue of damages only, and judgment shall enter upon the verdict of liability and damages after the issue of damages is decided." (Emphasis added.)

We consider the court's order of additur and setting aside the damages to be a final judgment. See *Morales* v. *Pentec, Inc.,* 57 Conn. App. 419, 424 n.1, 749 A.2d 47 (2000).

[3] Michelle Silva, by and through her next friend, Maria Silva, also was a plaintiff at trial but is not a party to this appeal. We therefore refer in this opinion to Maria Silva as the plaintiff.

[4] The plaintiff took the medicine with orange juice, which she had been advised not to drink because she suffered from a condition known as acid reflux.

Michelle Silva, informing her that the pharmacy had called to advise the plaintiff that she had been given the wrong prescription and that she should seek immediate medical attention.[5] The plaintiff claimed that when her daughter told her that she had been given the wrong prescription, she panicked and began to cry and shake.

The plaintiff's husband, Emanuel Silva, took her to the emergency room at St. Vincent's Medical Center (emergency room), where she was examined and blood tests were performed. The emergency room record indicates that the plaintiff took the prescription she was given at approximately 2 p.m., felt dizzy and sweaty, but felt better after she ate dinner. At the time she was in the emergency room, the plaintiff felt "fine," her vital signs and blood work were normal, and she was noted to be calm and cooperative. The plaintiff was discharged approximately two hours later with instructions to return if her symptoms worsened. The emergency room record states that the plaintiff could return to work on August 2, 2002. According to the plaintiff, after she was seen in the emergency room, she went home, spent the next day in bed and was absent from her employment for four days as a result of the subject incident. She complained of fatigue, confusion and fear that she would die from having taken the wrong medication.

Lane's records indicate that the plaintiff returned to his office on August 1, 2002, for sinus medication at which time she told Lane that she was willing to continue in a trial sinus medication study. Lane gave the plaintiff a medical excuse from employment until August 5, 2002. The plaintiff treated with Lane four times over the next month. Lane's records contain no

[5] The container that the plaintiff received at the pharmacy bore the name Maria Silva, but the address and the name of the prescribing physician were not the plaintiff's. The medication in the container, a treatment for diabetes, was for a different Maria Silva.

mention of the plaintiff's having complained of suffering any sequela from having taken the wrong medication.

On August 2, 2002, the plaintiff consulted an attorney to represent her with respect to the claims alleged against the defendants. On August 29, 2002, the plaintiff saw Peter Yannopoulos, an osteopath, and complained about anxiety and having difficulty concentrating and sleeping as a result of having taken the wrong medication. In October, 2002, Yannopoulos prescribed Ambien, Xanax and Zoloft for the plaintiff. The plaintiff continued to treat with Yannopoulos through March, 2003. In November, 2004, the plaintiff consulted Gayle Hoffman, a licensed clinical social worker, and David Zucker, a psychiatrist. The plaintiff claimed that as a result of having taken the wrong medication she was suffering from anxiety, depression and post-traumatic stress disorder, which affected her ability to concentrate on housework and caused her difficulty at work and in her sex life.

The plaintiff commenced this action in August, 2004. Her amended complaint sounded in four counts: negligence, negligent infliction of emotional distress, bystander emotional distress on behalf of Michelle Silva and product liability in violation of General Statutes § 52-572m et seq.[6] The defendants asserted a number of special defenses, including comparative negligence. Trial commenced on June 11, 2008, and the jury returned its verdict on June 17, 2008. The jury found in favor of the defendants on the plaintiff's negligent infliction of emotional distress count and in favor of the plaintiff on her negligence count, awarding the plaintiff $876.13 for economic damages and zero dollars for noneconomic damages. The jury found, however, that the

---

[6] The plaintiff withdrew the product liability count at the time of trial, and the court directed a verdict in favor of the defendants with respect to the bystander emotional distress count.

plaintiff was 10 percent negligent for her injuries, reducing the verdict to $788.52.

Counsel for the plaintiff argued that the jury's verdict was inconsistent in that it awarded economic damages but no noneconomic damages. The court noted the large difference between the economic damages claimed and those awarded and opined that the verdict was not inconsistent. After consulting with counsel, however, the court reinstructed the jury and asked it to continue deliberating.[7] After further deliberations, the jury confirmed its original verdict, which the court then accepted.

[7] The court reinstructed the jury as follows: "Now, ladies and gentlemen, there is a mode of thinking that says when one awards economic damages for medical treatment—in this case I think it's fairly easy to discern that the total of $876.13 is the emergency room visit plus the $504 of lost wages—I don't think any of us have any disagreement that's the exact figure. There is a mode of thinking that says, well, if you wish to award a medical bill, all right, that in awarding that medical bill . . . there's some acknowledgement of for whatever amount or for whatever length of time, some acknowledgement of pain and suffering. All right? You've awarded zero in that category, which would be noneconomic damages.

"Now, you're within your rights to do that. All right? And the—however, it is incumbent upon me to make sure that that is what you mean to do or whether or not you've thought about the process that, if in fact there was necessary medical treatment, that there might have been some pain and suffering, for whatever duration you have found, short-term or whatever, but whether or not it's enough to justify an award of noneconomic damages. All right?

"So, what I'm going to do, okay, is send you back into the jury room just to discuss that particular subject matter. Whether you wish to leave it at zero or whether you wish not to rethink it based upon what I said and award . . . some award of noneconomic damages. I'm not suggesting to you an amount. I'm not suggesting to you that it's mandatory. All right? And if you do wish to award it, it can be anywhere from nominal to whatever you think. But I'm just going to give you a few minutes—well, not—it's not up to me to say a few minutes. I'm going to give you the opportunity just to confirm amongst yourselves what you want to do on that line. All right?

"So, if the clerk will gather back the plaintiff's verdict form with the economic and noneconomic, hand it to the foreperson. Go back into the room. When you've decided what you want to do on that line, whether it's confirming what you've already done or you want to change it, just let me know. Knock on the door, we'll bring you back out again. Okay? Everything

Subsequently, the plaintiff filed a motion to set aside the jury's verdict as to damages, and for additur, claiming that the damages awarded were inadequate, contrary to law and contrary to the evidence. The defendants objected to the motion. In a memorandum of decision issued on November 10, 2008, the court granted the motion as to additur and awarded the plaintiff $3000, less 10 percent, or $2700. The court ordered that the verdict shall be set aside, unless within thirty days from the filing of its order, the defendants filed with the court clerk an additur in the amount of $2700 in noneconomic damages. The court further ordered that if the additur was not filed within the time specified, or filed and not accepted by the plaintiff, that the verdict would be set aside and a new trial held as to the issue of damages. Thereafter, the defendants appealed.[8]

On appeal, the defendants claim that the court abused its discretion by granting the plaintiff's motion for additur. We agree.

We first set forth the standard of review applicable to the granting of a motion for additur. "[I]t is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption. . . . [A] court's decision to set aside a verdict and to order an additur . . . is entitled to great weight and every reasonable presumption

is done here to make sure that we have clarified exactly what you want to do. It's not to question your judgment."

[8] During oral argument before this court, the parties represented that the defendants offered to pay the plaintiff the jury's damages award and the additur ordered by the court but that the plaintiff refused the offer.

should be given in favor of its correctness. . . . In determining whether the court abused its discretion, therefore, we decide only whether, on the evidence presented, the court reasonably could have decided that the jury did not fairly reach the verdict it did. To do so, we must examine the evidential basis of the verdict itself . . . ." (Internal quotation marks omitted.) *Smith* v. *Lefebre*, 92 Conn. App. 417, 422–23, 855 A.2d 1232 (2005).

"Because in setting aside a verdict the court has deprived a litigant in whose favor the verdict has been rendered of his constitutional right to have disputed issues of fact determined by a jury . . . the court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined. Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached. . . . [I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusion to be drawn from the evidence, the trial court should let the jury work [its] will." (Citations omitted; internal quotation marks omitted.) *Wichers* v. *Hatch*, 252 Conn. 174, 189, 745 A.2d 789 (2000).

"Rather than decide that an award of only economic damages is inadequate as a matter of law, the jury's decision to award economic damages and zero noneconomic damages is best tested in the light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff failed in his proof of the issue. That decision

should be made, not on the assumption that the jury made a mistake, but, rather on the supposition that the jury did exactly what it intended to do." (Internal quotation marks omitted.) *Smith* v. *Lefebre*, supra, 92 Conn. App. 421.

In its memorandum of decision, the court set out the following evidence in addition to that which the jury reasonably could have found. At the time the plaintiff began to treat with Zucker and Hoffman, she was complaining of memory problems, as well as anxiety. Zucker prescribed Zoloft and a sleep medication and diagnosed her as suffering from post-traumatic stress disorder. The plaintiff claimed that her having taken the wrong medication caused her memory and marital problems.

During the defendants' cross-examination of the plaintiff, she testified that she could not recall if at any time within ten years prior to the subject incident, that she had been treated by a physician for depression. During her deposition that was taken in August, 2004, and June, 2008, the plaintiff denied that she had had any psychiatric treatment in the past or that psychiatric medication had been prescribed for her prior to the date of the incident. The defendants, however, produced the plaintiff's prescription records that demonstrated that clonazepam and Zoloft had been prescribed for her by James M. Alexander, a psychiatrist, in 1998 and 1999. The plaintiff also had treated with David E. Ciancimino, a psychiatrist, who had prescribed Zoloft, lithium and clonazepam for her. When the plaintiff was confronted with the prescription records, she admitted seeing those psychiatrists but denied knowing that the physicians were psychiatrists. She had been referred to those physicians by a physician who had been counseling her for marital problems.

The plaintiff treated with Yannopoulos on August 28, 2007, and he prescribed her Cymbalta, an antidepressant, and Ambien for her sleep disorder. On August 30,

2007, the plaintiff saw Zucker and requested additional Ambien and antidepressant medication. She did not inform Zucker that Yannopoulos had given her prescriptions two days earlier.

The defendants called Douglas A. Berv, a board certified psychiatrist affiliated with the Yale University Medical School, to testify as an expert witness. Berv had reviewed the plaintiff's medical and prescription records. He disagreed with Zucker that the plaintiff suffered from post-traumatic stress disorder or, if she had the disorder, that it was a result of this subject incident. Berv noted the plaintiff's emergency room records: her laboratory results were within normal limits, including her glucose levels. The plaintiff had reported to the emergency room personnel that she was feeling fine and that her symptoms were gone. The emergency room records mention nothing about the plaintiff's complaining of anxiety or stress.

According to Berv, none of the plaintiff's medical records included symptoms necessary for a diagnosis of post-traumatic stress disorder. The hallmark of post-traumatic stress disorder is avoidance, and the plaintiff exhibited no signs of avoidance. In fact, since having taken the wrong medication, the plaintiff has filled more than 100 prescriptions involving sixty different medications. Significantly, the plaintiff agreed to participate in a study for a sinus medication the day after the subject incident. Berv testified that the plaintiff's medical records demonstrate that prior to the incident, the plaintiff had anxiety and difficulty sleeping. From 1998 through 2001, lorazepam, clonazepam, Zoloft and lithium were prescribed for the plaintiff. Those medications are used to treat anxiety, depression and sleep disorders.

The plaintiff submitted claims for economic damages consisting of medical and medication bills totaling

$5422.02. Her lost wages claim totaled $504. The court found that the jury rejected the vast majority of the plaintiff's claims for medical expenses and awarded only a small part of the plaintiff's claim for economic damages. There was conflicting evidence as to the plaintiff's injuries and the extent of any pain and suffering. The parties disputed the presence of and the extent of any preexisting psychiatric or psychological conditions from which the plaintiff may have suffered. Other than having marital problems, the plaintiff adamantly denied having any such preexisting conditions. The court reasoned that, although the defendants presented evidence of the plaintiff's prior history of having antidepressants prescribed for her, they offered no evidence as to the conditions that necessitated such medication. The court concluded that there was insufficient evidence of any preexisting psychiatric or psychological condition manifesting symptoms similar to those that the plaintiff alleges in this action.

The court found, however, that the plaintiff's credibility regarding her pain and suffering with respect to the subject incident was put in question by her testimony during her depositions and at trial. When confronted with her prescription history, the plaintiff denied previous psychiatric treatment, other than marriage counseling. Generally, the court did not find the plaintiff to be a credible witness, either on the question of long-term or extensive damages.

When addressing the jury's damages award, the court observed that the jury's award of $876.13 was mathematically consistent with the cost of the plaintiff's emergency room treatment and four days of lost wages. The court conceded the defendants' argument that, despite the mathematical consistency, there is no way to confirm the jury's intent as to damages, as no interrogatories were submitted to the jury. Regardless of its concession, the court reasoned that if the jury's award

did not include lost wages, the jury awarded the plaintiff medical costs beyond those she had incurred in the emergency room and that the jury may have decided that the plaintiff had suffered sufficiently to justify an award of four days of lost wages or medical treatment beyond that which she received in the emergency room. Although the jury may have rejected the plaintiff's claims of long-term medical care and substantial injuries, that does not negate the fact that the jury's award acknowledged some medical care and lost wages indicative of at least minimal pain, suffering and anxiety. The jury, however, was not obligated to believe that the plaintiff's having taken the wrong medication was the cause of all of the pain and suffering she had alleged. The court concluded that the jury, by finding that the plaintiff had suffered some injury requiring medical treatment to alleviate pain, improve functioning and possibly lost wages, necessarily found that she had experienced pain and decreased functioning for a short period of time. The court concluded that the jury, therefore, should have awarded the plaintiff noneconomic damages to compensate the plaintiff for that pain and suffering. The court consequently ordered an additur of $3000, less 10 percent for the plaintiff's comparative negligence.

We conclude that the court abused its discretion by granting the plaintiff's motion for additur. Its analysis of the jury's award is predicated on speculation, as the jury returned a general verdict. "The general verdict by its very nature is all encompassing . . . ." *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 746, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1235 (1997). Therefore, neither the trial court nor this court had any reasonable basis on which to break down the verdict. See id. "Where there is a general verdict and no breakdown of the components of the verdict, it would be error to set it aside." Id. Moreover, in its analysis, the court assumed

that the jury awarded the plaintiff economic damages for her emergency room treatment and four days of lost wages to alleviate pain and to improve functioning. On the basis of our review of the record, we find no evidence that the plaintiff went to the emergency room for the alleviation of pain or that her four day absence from work was the result of the subject incident. The plaintiff did not go to the emergency room when she claimed to be feeling ill during the afternoon of July 31, 2002, but went to the emergency room at the cautionary direction of the pharmacy. The evidence also discloses that Lane excused the plaintiff from employment for four days, but there is no reason given for the excuse. The jury had evidence before it that Lane was treating the plaintiff for a sinus infection.

"[I]t is the court's duty to set aside the verdict when it finds that it does not manifest injustice, and is . . . palpably against the evidence. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether a verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption." (Internal quotation marks omitted.) *Snell* v. *Beamon*, 82 Conn. App. 141, 145, 842 A.2d 1167 (2004). When ruling on a motion for additur, "the court should not assume that the jury made a mistake, but should suppose that the jury did exactly what it intended to do." *Weiss* v. *Bergen*, 63 Conn. App. 810, 814, 779 A.2d 195, cert. denied, 258 Conn. 908, 782 A.2d 1254 (2001). Moreover, "[t]he existence of conflicting evidence curtails the authority of the court to overturn the verdict because the jury is entrusted with deciding which evidence is more credible and what effect it is to be given." *Schettino* v. *Labarba*, 82 Conn. App. 445, 450, 844 A.2d 923 (2004).

"The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court. . . . Because in setting aside the verdict, the trial court deprives the party in whose favor the verdict was rendered of his constitutional right to have factual issues resolved by the jury, our role generally is to examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion." (Citation omitted; internal quotation marks omitted.) *Wichers* v. *Hatch*, supra, 252 Conn. 188.

"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . Similarly, [t]he credibility of witnesses and the weight to be accorded to their testimony lie within the province of the jury." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Chaves*, 78 Conn. App. 342, 346, 826 A.2d 1286, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). Credibility is the hallmark in a case where testimony is at issue. Although we do not know what the jury thought of the plaintiff's credibility, we do know that the court found it wanting with respect to long-term or extensive damages.

In this case, the issue of the plaintiff's injuries was contested with each side offering expert testimony as to whether the plaintiff suffered from post-traumatic stress disorder. It is within the province of the jury to

believe some, none or all of the evidence of an expert witness. See, e.g., *Granger* v. *A. Aiudi & Sons*, 60 Conn. App. 36, 43, 758 A.2d 417, cert. denied, 255 Conn. 902, 762 A.2d 908 (2000). The plaintiff's treating psychiatrist, Zucker, opined that she suffered from the disorder as a result of having taken the wrong medication. The defendants' expert, Berv, opined that the plaintiff did not suffer from such a disorder because the classic symptom of the disorder was not part of the plaintiff's medical history. "A verdict should not be set aside . . . where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) *Gilliard* v. *Van-Court Property Management Services, Ltd.*, 63 Conn. App. 637, 646, 777 A.2d 745 (2001). Berv's testimony provided a sufficient basis for the jury to believe that the plaintiff did not suffer from post-traumatic stress disorder.

Moreover, the nature of the plaintiff's injuries, at the time she took the wrong medication, was not severe. Approximately one hour after taking the medicine the plaintiff was dizzy and sweating, according to the emergency room records. As time passed, she felt better and by the time she arrived at the emergency room she was feeling fine. All of her vital signs were normal, including her blood sugar levels. The plaintiff saw Lane for one month following the incident, and nothing in his records indicates that the plaintiff complained of any ongoing sequela from the incident. Given the minimal nature of the incident and the alleged injuries, there can be no amount of monetary award that would be so extremely low as to shock the conscience. The jury was not compelled to accept the plaintiff's claims as to the severity of her injuries, nor was it required to award noneconomic damages merely because it had awarded economic damages. The trier of fact is free to accept or reject, in whole or in part, the evidence offered by either party.

See *Lidman* v. *Nugent*, 59 Conn. App. 43, 46, 755 A.2d 378 (2000).

While it is true that Lane excused the plaintiff from her employment for four days, nothing in the record indicates that the excuse was given because the plaintiff was suffering some ill effect of having taken the wrong medication, a precautionary measure or for some other reason. The plaintiff was suffering from a sinus infection, and Lane was starting her on a course of medication pursuant to a drug trial. Although it is mathematically consistent that the jury awarded the plaintiff the medical expenses she had incurred by visiting the emergency room and the lost wages resulting from four days she was absent from her employment, we do not know the jury's thinking. The jury may well have concluded that it was reasonable for the plaintiff to be excused from her employment as a precautionary measure and not because she was experiencing pain and suffering. After all, there was evidence that the plaintiff was well enough the day after the incident to consult an attorney. As in the case of *Lombardi* v. *Cobb*, 99 Conn. App. 705, 712, 915 A.2d 911 (2007) (*Lavine, J.*, dissenting), "[t]he jury, in its commonsense assessment of the case and evaluation of the plaintiff's credibility, might well have believed that she either sought medical treatment as an appropriate precautionary measure or in anticipation of possible litigation but that she failed to prove that she had actually suffered compensable pain." The jury was not required to find that, because the plaintiff sought treatment for pain and suffering, she necessarily experienced pain and suffering.

The record also contains evidence that the plaintiff had been under the care and treatment of a psychiatrist prior to the July 31, 2002 incident in which she had taken one dose of the wrong medication. Her prescription history indicated that she had been taking anxiety and antidepressant medications for a number of years

prior to the date of the subject incident. It was not unreasonable, therefore, for the jury to find that the plaintiff sought treatment and care from mental health professionals due to the plaintiff's preexisting mental health problems.[9] See *Wichers* v. *Hatch*, supra, 252 Conn. 190 ("jury reasonably could have found that the accident had not aggravated the plaintiff's condition, and that his pain was the same as what he had experienced before his accident with the defendant").

For the foregoing reasons, we conclude that the court abused its discretion by granting the plaintiff's motion for additur and ordering the jury's verdict set aside. There is evidence in the record to support the jury's having awarded the plaintiff economic damages and zero noneconomic damages. We cannot assume that the jury did not do what it intended to do.[10]

The judgment is reversed and the case is remanded with direction to reinstate the jury's verdict and to render judgment thereon.

In this opinion the other judges concurred.

---

[9] The plaintiff did not allege that the subject incident aggravated any preexisting medical condition. Lane's medical records contain a letter from Warren Heller, a physician, in response to Lane's having sent the plaintiff to him for a consultation. The April 21, 2000 letter states in part: "She also has problems with nervousness and stress and sees a psychiatrist."

[10] Because we reverse the judgment on the basis of the defendants' first claim, we need not reach their claim that the court abused its discretion by ordering a new trial as to damages only.