### SILVIO BENEDETTO *v.* MUGNI ZAKU
### (AC 28995)

Harper, Beach and Berdon, Js.

Argued October 28, 2008—officially released February 3, 2009

*Robert O. Hickey*, with whom, on the brief, was *Joseph J. Arcata III*, for the appellant (defendant Progressive Casualty Insurance Company).

*Keith P. Sturges*, for the appellee (plaintiff).

*Opinion*

BERDON, J. The only issue in this personal injury case is whether the trial court abused its discretion in setting aside the verdict and ordering a new trial after the defendant insurance carrier refused to accept an additur to supplement the verdict in favor of the plaintiff. We hold that the court did not abuse its discretion and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are pertinent to our resolution of this appeal. On July 9, 2002, the plaintiff, Silvio Benedetto, was involved in a motor vehicle accident with Mugni Zaku. Thereafter, the plaintiff commenced this action against Zaku, seeking damages for personal injuries that he allegedly sustained in the accident. The court subsequently granted the

plaintiff's motion to cite in as a defendant his own insurer, Progressive Casualty Insurance Company, to defend an underinsured motorist claim under the provisions of the plaintiff's insurance policy. In February, 2005, the plaintiff withdrew the action as against Zaku after Zaku admitted liability and his insurance carrier paid to the plaintiff the limits of Zaku's policy in the amount of $20,000. The plaintiff maintained his claim against the defendant insurer, and the case proceeded to a jury trial. The issues for the jury to decide were whether the accident proximately caused the injuries claimed by the plaintiff and, if so, what the resulting damages were. On April 28, 2006, the jury returned a verdict in favor of the plaintiff in the amount of $8872.14 for past medical expenses and $50,000 for future medical expenses for surgery involving a two level spinal fusion with a laminectomy, for a total of $58,872.14.[1] The jury did not, however, award any noneconomic damages. On May 5, 2006, the plaintiff filed a motion to set aside the verdict and for additur. On December 14, 2006, pursuant to General Statutes § 52-228b,[2] the court ordered an additur of $50,000, which, on January 2, 2007, the defendant rejected. As a result, the court granted the plaintiff's motion to set aside the jury's verdict and ordered a new trial. This appeal followed.

---

[1] " 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages . . . 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering . . . ." General Statutes § 52-572h (a).

[2] General Statutes § 52-228b provides in relevant part: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion . . . . No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

We begin with our standard of review. "In *Wichers* v. *Hatch*, 252 Conn. 174, 181–89, 745 A.2d 789 (2000), our Supreme Court set out the standard that governs appellate review of a trial court's decision that a jury's award of damages is inadequate. In such a case, a trial court has some discretion to set the jury verdict aside and to order a new trial unless the parties agree to a court specified additur to the amount awarded by the jury. . . .

"*Wichers* reflects the two competing jurisprudential principles that additurs bring into play. On the one hand, deference to the ruling of the trial court is warranted because that court, having observed the trial proceedings in their entirety, is in a better position than an appellate court to assess the credibility of the witnesses and the appropriate weight to be accorded their testimony. . . . On the other hand, deference is problematic because the trial court's exercise of its discretion impairs the litigants' constitutional right to designate a jury, rather than a court, to be the fact finder in their case. . . . Indeed, the Supreme Court of the United States has declared, as a matter of federal law, that *any* additur violates the right to a jury trial that is guaranteed by the seventh amendment to the United States constitution. . . .

"On their face, these two jurisprudential principles are difficult to reconcile. To find the proper balance between them, *Wichers* holds that a case-specific standard should apply to the instance in which a party seeks to have a verdict set aside on the basis that it is legally inadequate. . . . For more than seventy-five years, judicial decisions have reflected the wisdom of legal realism that case law should reflect the factual circumstances under which the controversy between the parties arose. In that sense, every judicial ruling is case specific. *Wichers* must, therefore, have intended something more. We read *Wichers* as an instruction to a trial

court specifically to identify the facts of record that justify the extraordinary relief of additur and as an instruction to an appellate court to inquire whether the facts so identified justify the trial court's exercise of its discretion to set a jury verdict aside because of its perceived inadequacy." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Turner* v. *Pascarelli*, 88 Conn. App. 720, 722–24, 871 A.2d 1044 (2005).

In the present case, the court, in its memorandum of decision, focused on the fact that the jury concluded that the accident proximately caused the plaintiff's injury. The court also considered that (1) both parties' physicians agreed that the plaintiff's injuries were permanent and painful, and would likely worsen in the future, and (2) that both physicians disagreed as to how much of the plaintiff's back pain was attributable to the accident, but they both agreed that some of the plaintiff's pain was attributable to the accident. The court concluded that an award of $50,000 for a future surgery "that will produce pain, suffering and disability" without any award for noneconomic damages was not within the bounds of fair and reasonable compensation.

The record supports the court's recitation of the facts adduced at trial. Although the parties' expert witnesses disputed the extent of the plaintiff's injuries and their relationship to the July 9, 2002 accident, as opposed to a preexisting degenerative condition, the defendant insurer's expert witness testified that he concluded that the plaintiff was asymptomatic prior to the accident, that the accident contributed to the plaintiff's injury and caused approximately 25 percent of the plaintiff's pain and that the plaintiff's pain would only get worse with time. The defendant insurer's expert also conceded that on a regular basis, surgeons recommend surgery to treat injuries similar to the plaintiff's and that without surgery the plaintiff would experience pain for the rest

of his life, although the expert personally would not recommend surgery because he believed that it was unlikely that surgery would improve the plaintiff's condition.

The jury found that the plaintiff's damages were proximately caused by the motor vehicle accident on July 9, 2002, and awarded the plaintiff 100 percent of his past medical bills and $50,000 toward future medical bills. This finding, however, is inconsistent with the jury's finding that the accident did not cause the plaintiff any noneconomic damages, which indicates that the jury did not find that the accident caused the plaintiff any pain and suffering or permanent injury. See *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 332, 789 A.2d 459 (2002). The evidence presented to the jury pertaining to future medical bills addressed spinal fusion surgery. It is not reasonable for a jury to find a defendant liable for the expense of a spinal fusion surgery, but not liable for the pain and permanent disability necessarily attendant to such intrusive surgery. Id. The jury was free to find the defendant insurer liable for some, all or none of the plaintiff's economic damages. After finding the defendant insurer liable for at least a portion of the plaintiff's spinal fusion surgery, however, the jury reasonably could not have found that the defendant insurer was free from liability for all of the pain or disability attendant to such surgery. See id., 333. The court identified this logical inconsistency in the jury's verdict. It was, therefore, a proper use of its discretion to set aside the verdict and order a new trial.

Our holding today is consistent with the seminal case of *Wichers* v. *Hatch*, supra, 252 Conn. 174. In *Wichers*, our Supreme Court overruled the requirement that as a matter of law, economic damages must be accompanied by noneconomic damages. Id., 186. The court, however, declined to fix a benchmark for when noneconomic damages are required. Id., 188. Instead,

the court mandated review on a case-by-case basis. The trial court must use all of its knowledge and consider whether the verdict is "so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence . . . ." (Internal quotation marks omitted.) Id., 187.

The present case is unlike any other in which this court has reversed a trial court's judgment ordering a new trial due to the jury's failure to award noneconomic damages. The jury here awarded substantial economic damages and zero noneconomic damages. Contra *Turner* v. *Pascarelli,* supra, 88 Conn. App. 720 (abuse of discretion to set aside verdict awarding $4000 in economic damages and $400 in noneconomic damages). There also was no reason for the jury to question the plaintiff's credibility regarding the extent of his injuries. Contra *Smith* v. *Lefebre,* 92 Conn. App. 417, 424, 885 A.2d 1232 (2005) (abuse of discretion to set aside verdict awarding $5500 in economic damages and zero noneconomic damages where plaintiff admitted on cross-examination to lying about missing work and continuing to train with weights at gym). This case is similar, however, to many cases in which this court has held that a jury's failure to award noneconomic damages was inconsistent with its verdict. See *Fileccia* v. *Nationwide Property & Casualty Ins. Co.,* 92 Conn. App. 481, 489, 886 A.2d 461 (2005) (abuse of discretion to allow verdict with zero noneconomic damages where jury found defendant proximately caused injury requiring treatment with pain medication), cert. denied, 277 Conn. 907, 894 A.2d 987 (2006); *Elliot* v. *Larson,* 81 Conn. App. 468, 477, 840 A.2d 59 (2004) (preexisting condition did not justify award of zero noneconomic damages where condition was asymptomatic prior to accident).

The court's memorandum of decision reflects a thorough application of the law to the facts of this case. We conclude, therefore, that the court acted within its

discretion to find that the jury's verdict awarding the plaintiff almost $9000 in past medical bills and $50,000 toward the cost of future surgery without any compensation for noneconomic damages was improper as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.