******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHRISTOPHER CUSANO *v.* EDWARD
LAJOIE ET AL.
(AC 39279)

Sheldon, Prescott and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for personal
injuries he allegedly sustained when an automobile driven by the named
defendant rear-ended his automobile. After the jury returned a verdict
awarding $3000 in economic damages and zero noneconomic damages,
the trial court declined to accept the verdict and ordered the jury to
review its verdict. After reconsidering the verdict, the jury again returned
a verdict awarding no noneconomic damages. The trial court, thereafter,
granted the plaintiff's motion for additur and ordered an additur of
$2000. From the judgment rendered thereon, the defendants appealed
to this court. *Held* that the trial court abused its discretion in ordering
the additur and concluding that the jury's award of medical expenses
required it to find that the plaintiff had suffered compensable pain
throughout the period of his medical treatment; that court did not iden-
tify any part of the trial record that supported its reasoning, nor did it
provide any explanation for the amount of the additur, and the jury
reasonably could have determined that the plaintiff had not proven any
noneconomic damages for pain and suffering, or damages for lost wages,
given the inconsistent and conflicting evidence, the questions of credibil-
ity concerning the extent, if any, of the plaintiff's pain and suffering,
and the plaintiff's subjective complaints of pain stemming from alleged
soft tissue injuries rather than from injuries such as broken bones.

Argued October 5—officially released December 12, 2017

*Procedural History*

Action to recover damages for personal injuries sus-
tained by the plaintiff as a result of the defendants'
negligence, brought to the Superior Court in the judicial
district of New Britain and tried to the jury before
*Swienton, J.*; verdict for the plaintiff; thereafter, the
court granted the plaintiff's motion for additur, and the
defendants appealed to this court. *Reversed*; *judg-
ment directed.*

*Karen L. Dowd*, with whom, on the brief, was *Bren-
don P. Levesque*, for the appellants (defendants).

*Scott A. Leventhal*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendants, Edward Lajoie and Kathleen Weaver,[1] appeal from the judgment of the trial court granting the motion of the plaintiff, Christopher Cusano, for additur in the amount of $2000. On appeal, the defendants argue that the trial court abused its discretion in granting the motion for additur. We agree and, accordingly, reverse the judgment of the trial court.

The plaintiff filed this action following a minor car accident that occurred on July 4, 2014, in which Weaver's vehicle, while being driven by Lajoie, rear-ended the plaintiff's vehicle. The collision caused the plaintiff's vehicle to sustain damage requiring approximately $678 in repair costs.

Following the collision, the plaintiff did not immediately feel injured, so he drove away and spent several hours at a picnic. When the plaintiff woke up the next day, however, he allegedly felt pain in his neck and upper back, which caused him to leave work approximately ninety minutes after he arrived. Five days later, the plaintiff saw a chiropractor, Awilda Figueroa, to whom he reported that he was experiencing pain that was "like a nine" on a scale of one to ten. Figueroa saw the plaintiff nineteen times over the ensuing three months for the alleged injuries to his neck and upper back. Over the course of his treatment, the level of pain the plaintiff reported to Figueroa decreased. After the plaintiff's final visit in January, 2015, Figueroa stated in her final report that "[t]he patient reports that all injuries and underlining pain have resolved with reference to the accident he suffered."

Following the accident, the plaintiff's employer, a furniture liquidation company, placed him on light duty. When the plaintiff attempted to resume his more labor-intensive duties, he allegedly began to feel discomfort in his neck and upper back. The plaintiff also worked part time for an executive protection firm, performing five or six jobs per year, ranging from what he described as high risk to low risk assignments. After the accident, the plaintiff allegedly did not accept any high risk assignments; however, he occasionally accepted low risk assignments.

On April 7, 2015, the plaintiff filed a two count complaint alleging negligence against the defendants. The defendants did not contest liability. After a jury trial in April, 2016, the jury initially sought to return a verdict awarding the plaintiff the full amount of his claimed $3320 in medical expenses, but no damages for his claimed lost wages of $750 or his claimed noneconomic damages. After its review of the initial verdict, the court declined to accept it and instructed the jury as follows: "While that is a possible verdict, some might argue that it is inconsistent to say that a person was injured enough to incur medical expenses and lost wages, but experi-

enced no pain and suffering or other noneconomic damages. On the other hand, you may have concluded that while the plaintiff proved his economic damages, he failed to prove any noneconomic damages. To help eliminate any concerns either party might have, I'm going to ask you to go back and review your verdict. In addition to my instructions regarding the plaintiff's burden of proving damages, you should, also, remember my instruction that even momentary pain and suffering is compensable."

After reconsidering its verdict, the jury once again sought to return a verdict awarding the plaintiff no noneconomic damages. On April 13, 2016, after the second verdict was accepted and recorded, the plaintiff filed a motion for additur, or in the alternative, to have the verdict set aside as "inconsistent and unreasonable given the evidence presented in this case." The court determined that "under the particular circumstances of this case, it is inconsistent to conclude that [the plaintiff] was injured to the extent that he incurred substantial medical expenses and at no time during the course of the treatment experienced pain and suffering. The court is compelled to conclude that the jury did not apply the law to the facts of the case, or were influenced by partiality, prejudice or mistake." The court accordingly ordered an additur for noneconomic damages in the amount of $2000. The plaintiff accepted the additur, but the defendants rejected it. This appeal followed.

The standard of review for determining whether a trial court properly ordered an additur is well settled. "[W]e review a decision of the trial court . . . ordering an additur to determine whether the trial court properly exercised its discretion." *Wichers* v. *Hatch*, 252 Conn. 174, 181, 745 A.2d 789 (2000). "[T]he jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue. That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do." Id., 188–89.

"It is axiomatic that [t]he amount of damages awarded is a matter peculiarly within the province of the jury . . . . Moreover, there is no obligation for the jury to find that every injury causes pain, or the amount of pain alleged. . . . Put another way, [i]t is the jury's right to accept some, none or all of the evidence presented. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Smith* v.

*Lefebre*, 92 Conn. App. 417, 421–22, 885 A.2d 1232 (2005). "The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption." *DeEsso* v. *Litzie*, 172 Conn. App. 787, 796, 163 A.3d 55, cert. denied, 326 Conn. 913, A.3d (2017).

On appeal, the defendants argue that the court failed to review the evidence in the light most favorable to sustaining the verdict. Specifically, the defendants argue that the court abused its discretion in ordering the additur because there existed conflicting evidence and questions of credibility, and the plaintiff's complaints were of a subjective nature, i.e., stemming from so-called soft tissue injuries rather than from injuries such as broken bones. We agree.

This court previously has explained that "[w]e read *Wichers* as an instruction to a trial court specifically to identify the facts of record that justify the extraordinary relief of additur and as an instruction to an appellate court to inquire whether the facts so identified justify the trial court's exercise of its discretion to set a jury verdict aside because of its perceived inadequacy." *Turner* v. *Pascarelli*, 88 Conn. App. 720, 723–24, 871 A.2d 1044 (2005). "Under *Wichers*, it is not enough to base an additur on a conclusory statement that a jury award was [inadequate] . . . . The question, therefore, is whether the court elsewhere articulated a sufficient factual basis for its decision to order an additur." Id., 724.

Our review of the trial court's memorandum of decision in the present case reveals only a conclusory statement regarding the jury's award and no delineation of a sufficient factual basis for its decision to order an additur of $2000. Although the memorandum of decision details the facts that the parties established at trial, it does not state the specific facts relied upon by the court to justify its decision to award the extraordinary relief of additur. Moreover, the memorandum of decision does not contain any description or explanation of how or why the court calculated $2000 as the appropriate amount of noneconomic damages. Instead, the court seems to assume that because the plaintiff sought medical treatment for pain in his upper back and neck, and was awarded the full amount of the cost of that treatment, the plaintiff inevitably experienced compensable pain and suffering. Our Supreme Court expressly rejected that reasoning in *Wichers* v. *Hatch*, supra, 252 Conn. 188–89. We, therefore, conclude, as this court did in *Turner* v. *Pascarelli*, supra, 88 Conn. App. 727, "that the court abused its discretion by ordering an additur without identifying the part of the record that

supported its determination that an award of [zero] noneconomic damages was unreasonable under the circumstances of this case."

Furthermore, the court abused its discretion in ordering the additur because there existed conflicting evidence and credibility issues concerning the extent, if any, of the plaintiff's pain and suffering. A court must view the evidence in the light most favorable to sustaining the jury's verdict. "Because in setting aside a verdict the court has deprived a litigant in whose favor the verdict has been rendered of his constitutional right to have disputed issues of fact determined by a jury . . . the court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined. Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand . . . ." (Citation omitted; internal quotation marks omitted.) *Wichers* v. *Hatch*, supra, 252 Conn. 189. Thus, the court should not assume that the jury made a mistake, but should suppose "that the jury did exactly what it intended to do." Id.

This court's decision in *Smith* v. *Lefebre*, supra, 92 Conn. App. 417, guides our discussion of this issue. In *Smith*, the plaintiff and the defendant were in a minor motor vehicle accident in which the defendant rear-ended the plaintiff. Id., 418, 426. Credibility issues existed in *Smith*, as the defendant established that the plaintiff's attorney referred her to a doctor, but the plaintiff testified that she chose the doctor from a telephone directory in the phonebook. Id., 424–25. Additionally, there were conflicting statements about the nature of the plaintiff's injury—specifically whether the injury was a bulging or herniated disk and whether surgery was required. Id., 426. This court concluded that "[i]n light of the evidence, it was reasonable for the jury to award zero noneconomic damages." Id.

Similarly here, the evidence presented regarding how much time from work the plaintiff missed was inconsistent. In an answer to one of the defendants' interrogatories, the plaintiff stated that he "was home for the first [one to two] days after the accident." Later, in answering another interrogatory, the plaintiff stated that he missed one week of work. The interrogatory answers were introduced at trial. The plaintiff testified at trial that he missed one week of work. Thus, the evidence, at times, was conflicting and inconsistent.

Moreover, on cross-examination, when the defendants' counsel asked the plaintiff about the pain he was claiming, the plaintiff testified to the following: he did not seek medical treatment until five days after the accident; he never went to the emergency room; he did not have an MRI or a CAT Scan; and he did not know

the results of his X ray, but it would not surprise him if the results showed everything was normal. Cross-examination also established that, despite the plaintiff's claim of ongoing pain in mid-2016 at the time of trial, Figueroa last treated the plaintiff in September, 2014, and gave the plaintiff a "final rating"[2] in January, 2015. The plaintiff also testified that he had not sought treatment for the injuries or pain related to the accident after his last visit with Figueroa in January, 2015.

The jury also heard testimony about the plaintiff's current job, as a surveyor for an engineering company, where he was working in the field about 80 percent of the time. The plaintiff explained that the job had a physical aspect because he hiked through marshes and up and down trails. The plaintiff answered in the affirmative when the defendants' counsel asked him whether "there['s] some beating that [his] body takes [while] doing [his current job]." He also testified that he never had to call out of work in his current employment because of injuries or pain related to the accident.

In light of the two identical verdict forms that the jury submitted to the court, it is reasonable to conclude that the jury resolved the conflicting evidence by rejecting the plaintiff's lost wages claim and his noneconomic damages claim for pain and suffering upon determining that the plaintiff had failed to prove those claims by a fair preponderance of the evidence. As set forth in *Wichers*: "[I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work their will." (Internal quotation marks omitted.) *Wichers* v. *Hatch*, supra, 252 Conn. 189.

After reviewing the evidence adduced at trial, we conclude that the jury's verdict was within the parameters of fair and reasonable compensation. The jury reasonably could have determined, as it apparently twice did, that the plaintiff had not proven any noneconomic damages for pain and suffering, or damages for lost wages. The court, in its memorandum of decision, did not set forth facts and reasons in explanation of how and why it determined that an additur was appropriate, how and why it calculated $2000 as the appropriate amount of the additur, or why it concluded that "the jury [was] influenced by partiality, mistake or corruption." (Internal quotation marks omitted.) *DeEsso* v. *Litzie*, supra, 172 Conn. App. 796. Accordingly, we conclude that the trial court abused its discretion in ordering an additur for noneconomic damages in the amount of $2000.[3]

The judgment is reversed and the case is remanded with direction to reinstate the jury's verdict and to render judgment thereon.

In this opinion the other judges concurred.

[1] Lajoie was Weaver's employee, and was acting within the scope of his employment while driving Weaver's vehicle at the time of the automobile accident at issue in this case. Collectively, we refer to Lajoie and Weaver as "the defendants." Individually, we refer to them by name.

[2] The "final rating" was a report that Figueroa created detailing the plaintiff's treatment and progress. The "final rating" noted that the plaintiff had returned to preinjury status as of January, 2015.

[3] The plaintiff claims that the existence or nonexistence of a preexisting injury is the determining factor in whether an award of virtually all of the plaintiff's economic damages but no noneconomic damages is inconsistent and unreasonable. Although the existence of a preexisting injury may be a circumstance for the jury to consider when deciding whether to award noneconomic damages, it is not the sole deciding factor. See *Turner* v. *Pascarelli*, supra, 88 Conn. App. 726, 730 (jury could have found that plaintiff contributed to his lack of recovery by failing to follow physical therapy, and by engaging in activities that exacerbated his injuries; preexisting injury was *alternative* factor); see also *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, 92 Conn. App. 481, 488, 886 A.2d 461 (2005) (absence of preexisting injury as *additional* factor for consideration), cert. denied, 277 Conn. 907, 894 A.2d 987 (2006).

"[O]ur Supreme Court has held that an award of virtually all of a plaintiff's claimed economic damages, with no accompanying noneconomic damages, demonstrated an inconsistency in the verdict . . . although it allowed that in a different case, such an award might be proper." (Citation omitted; internal quotation marks omitted.) *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, supra, 92 Conn. App. 487; see also *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 334 n.5, 789 A.2d 459 (2002) ("[o]ur conclusion on the facts of this case does not foreclose the possibility, in accordance with *Wichers* . . . that a jury in a case with different facts reasonably could award the full amount of a plaintiff's claimed economic damages but no noneconomic damages").