******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WILLIAM MALDONADO ET AL. *v.* KELLY C. FLANNERY ET AL.
## (AC 43154)

Keller, Bright and Bear, Js.*

*Syllabus*

The plaintiffs, M and H, sought to recover damages from the defendants for personal injuries they allegedly sustained in a motor vehicle accident in which their vehicle was struck by a vehicle driven by the named defendant. Following a trial, at which M and H testified, the jury returned a verdict in favor of the plaintiffs, awarding them economic damages but no noneconomic damages. Thereafter, the trial court granted the plaintiffs' joint motion for additurs, ordered additurs of $8000 to the award to M and $6500 to the award to H, and rendered judgment in favor of the plaintiffs. On the defendants' appeal to this court, *held* that the trial court abused its discretion in granting the plaintiffs' motion for additurs; that court failed to identify the part of the trial record that supported its conclusion that the jury's failure to award noneconomic damages was unreasonable under the facts of this case; moreover, even if the court had sufficiently identified facts in the record to support its order of additurs, this court, after having undertaken a fact intensive analysis, determined that the jury reasonably could have concluded that the plaintiffs failed to prove any noneconomic damages for pain and suffering caused by the subject accident, given the inconsistent and conflicting testimony and evidence, and the jury could have determined that the plaintiffs lacked credibility.

Argued May 29—officially released September 8, 2020

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the named defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Budzik, J.*; verdict for the plaintiffs; thereafter the court granted the plaintiffs' motion for additurs and rendered judgment for the plaintiffs, from which the defendants appealed to this court. *Reversed*; *judgment directed*.

*Jack G. Steigelfest*, for the appellants (defendants).

*Philip F. von Kuhn*, for the appellees (plaintiffs).

*Opinion*

BEAR, J. The plaintiffs, William Maldonado and Geovanni Hernandez, brought a negligence action against the defendants, Kelly C. Flannery and Michael T. Flannery,[1] seeking damages for injuries sustained in an automobile accident. After a jury trial, the jury returned a verdict in favor of the plaintiffs in which it found economic damages for the plaintiffs but no noneconomic damages. The plaintiffs filed a joint motion for additurs requesting that the court order noneconomic damages. The court granted the plaintiffs' joint motion and ordered noneconomic damages. The defendants appeal from the judgment of the court granting the plaintiffs' joint motion for additurs and ordering additurs in the amount of $8000 to the verdict in favor of Maldonado and $6500 to the verdict in favor of Hernandez. On appeal, the defendants claim that the trial court abused its discretion by granting the plaintiffs' joint motion for additurs because the court's memorandum of decision lacked the specific facts it relied on to justify additurs, and there existed issues of credibility regarding the plaintiffs' testimony about their noneconomic damages. Therefore, the plaintiffs failed to prove their claims for noneconomic damages. We agree that the court abused its discretion in ordering additurs and, accordingly, reverse the judgment of the trial court.

The court set forth the following factual and procedural history in its memorandum of decision on the plaintiffs' joint motion for additurs. "On June 6, 2016, at approximately 3:20 p.m., [the plaintiffs] were driving [a 2004 Ford Econoline van] on Route 4 in Farmington. Maldonado was driving . . . [and] Hernandez was the passenger. . . . [The defendant] was driving a Ford Taurus sedan . . . [and] collided with the rear of [the plaintiffs'] van. Accident photos entered into evidence showed that [the defendant's sedan] sustained serious damage to its front bumper and front hood, while [the plaintiffs'] van sustained minimal visible damage. This disparity in vehicle damage was likely due to the van's sturdy metal rear bumper and the fact that the disparity in the vehicles' height caused [the defendant's sedan] to slide under the van's rear bumper.

"[The plaintiffs] did not complain of injuries at the scene of the accident. [They] sought treatment in the evening on the same day of the accident at the Hospital of Central Connecticut. At that time, [the plaintiffs] complained of pain in their lower backs and neck regions. Maldonado had a contusion on his sternum, presumably from his seat belt. Both [of the plaintiffs] were evaluated and released from the [hospital] on the evening of June 6, 2016.

"Maldonado treated with a chiropractor for approximately [two] months from April to June, 2014 [after a prior motor vehicle accident]. At that time, Maldonado

visited the chiropractor [twelve] times and was discharged with no further treatment needed. Hernandez had no prior accidents.

"Subsequent to the 2016 accident, [the plaintiffs] had [magnetic resonance imaging (MRI) scans] and other diagnostics tests related to the accident that the jury reasonably could have concluded caused the plaintiffs no pain or suffering. Nevertheless, the plaintiffs' medical records introduced at trial demonstrate that, from the date of the accident to approximately August of 2018, the plaintiffs did receive treatment that inherently involved some degree of pain. Specifically, Maldonado treated at New Britain Injury & Spine approximately [sixty-two] times. These treatments involved chiropractic manipulation of Maldonado's spine and neck, application of hot and cold packs, electrical stimulation, and, on occasion, mechanical traction. Similarly, Hernandez treated at New Britain Injury & Spine approximately [forty-nine] times. These treatments involved chiropractic manipulation of Hernandez' spine and neck, application of hot and cold packs, and electrical stimulation. Finally, on one occasion, [the plaintiffs] received epidural steroid injections of their lumbar regions at Jefferson Radiology. Maldonado was assigned a 5 [percent] permanent partial disability rating by his chiropractor, [Brian] Pollack. Although the defendants' expert, [Jonas] Lieponis, an orthopedic surgeon, disputed the extent of the plaintiffs' injuries, he agreed that both plaintiffs sustained sprains and/or strains to their neck and lumbar regions.

"In [returning] its verdict in favor of the plaintiffs, the jury awarded $17,228.38 of Maldonado's claimed $18,953.38 in past economic damages for medical costs, as well as $1800 in future economic damages. With respect to Hernandez, the jury awarded $11,864.94 of the claimed $13,254.94 as past economic damages for medical costs. The jury did not award Hernandez any future economic damages. The jury did not award either plaintiff any noneconomic damages. The plaintiffs' verdict forms stated the amount claimed for past economic damages for each individual medical provider. With the exception of slight reductions for the claimed amounts for chiropractic care at New Britain Injury & Spine, the jury awarded the plaintiffs the requested amounts."

The plaintiffs filed a two count complaint sounding in negligence[2] on July 18, 2017. The case was tried before the jury from January 23 to January 25, 2019. The jury returned its verdict on January 25, 2019, in favor of Hernandez and awarded him economic damages of $11,864.94 and zero noneconomic damages. The jury also returned its verdict in favor of Maldonado and awarded him economic damages of $19,028.38 and zero noneconomic damages. Thereafter, on January 30, 2019, the plaintiffs filed their joint motion for additurs. On June 25, 2019, the court issued a memorandum of deci-

sion in which it granted the plaintiffs' joint motion for additurs, concluding that the jury verdict awarding economic damages to each plaintiff, but no noneconomic damages, was internally inconsistent. The court further concluded that the jury could not have properly reached its verdict, that the plaintiffs were not entitled to awards for pain and suffering, on the basis of the evidence adduced at trial. This appeal followed. Additional facts will be set forth as necessary.

A motion for additur is a "statutory creation that allows the court to increase the award of damages when the verdict is inadequate as a matter of law." *Demchak* v. *New Haven*, 93 Conn. App. 309, 311–12, 889 A.2d 266 (2006); see General Statutes §§ 52-228a[3] and 52-228b.[4] "The standard of review for determining whether a trial court properly ordered an additur is well settled. [W]e review a decision of the trial court . . . ordering an additur to determine whether the trial court properly exercised its discretion. . . . [T]he jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue. That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do. . . .

"It is axiomatic that [t]he amount of damages awarded is a matter peculiarly within the province of the jury . . . . Moreover, there is no obligation for the jury to find that every injury causes pain, or the amount of pain alleged. . . . Put another way, [i]t is the jury's right to accept some, none or all of the evidence presented. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption." (Citations omitted; internal quotation marks omitted.) *Cusano* v. *Lajoie*, 178 Conn. App. 605, 609–10, 176 A.3d 1228 (2017).

On appeal, the defendants argue that the court failed to view the evidence in the light most favorable to sustaining the jury's verdict. Specifically, they argue that the court abused its discretion by granting the plaintiffs' joint motion for additurs because it improperly concluded that the jury verdict awarding economic damages but not noneconomic damages was inconsis-

tent and that the jury could not have reasonably concluded that the plaintiffs were not entitled to awards for pain and suffering. We agree.

Our Supreme Court has stated that "a case-specific standard should apply to the instance in which a party seeks to have a verdict set aside on the basis that it is legally inadequate." *Wichers* v. *Hatch*, 252 Conn. 174, 181, 745 A.2d 789 (2000). This court, thereafter, interpreted and explained *Wichers*: "For more than seventy-five years, judicial decisions have reflected the wisdom of legal realism that case law should reflect the factual circumstances under which the controversy between the parties arose. In that sense, every judicial ruling is case specific. *Wichers* must, therefore, have intended something more. We read *Wichers* as an instruction to a trial court specifically to identify the facts of record that justify the extraordinary relief of additur and as an instruction to an appellate court to inquire whether the facts so identified justify the trial court's exercise of its discretion to set a jury verdict aside because of its perceived inadequacy." (Footnotes omitted.) *Turner* v. *Pascarelli*, 88 Conn. App. 720, 723–24, 871 A.2d 1044 (2005). "Under *Wichers*, it is not enough to base an additur on a conclusory statement that a jury award was [inadequate] . . . . The question, therefore, is whether the court elsewhere articulated a sufficient factual basis for its decision to order an additur." (Internal quotation marks omitted.) *Cusano* v. *Lajoie*, supra, 178 Conn. App. 610.

In the present case, the court's memorandum of decision granting the plaintiffs' joint motion for additurs lacks the necessary identification of the specific facts that would justify an additur of $8000 to Maldonado and $6500 to Hernandez. See *Wichers* v. *Hatch*, supra, 252 Conn. 181; *Turner* v. *Pascarelli*, supra, 88 Conn. App. 723–24. The court's memorandum of decision describes the facts that the parties offered during the trial, but it does not delineate the specific facts that led to its decision to grant the plaintiffs' joint motion for additurs. In its memorandum of decision, the court concluded that, because the jury awarded damages for medical treatment received by the plaintiffs, the plaintiffs must have suffered compensable pain and suffering. Specifically, the court stated: "Both the inherent underlying symptoms necessary to make [the plaintiffs'] treatments 'reasonable and necessary' in the eyes of the jury, as well as the treatments themselves, all bespeak a level of physical pain suffered by Maldonado and Hernandez. . . . It would be illogical and inconsistent to conclude that the treatments credited by the jury were reasonable and necessary, but that they were not made so because of any neck or back pain suffered by the plaintiffs." This court and our Supreme Court have rejected the notion that because a jury awards economic damages for medical treatment, it therefore must award damages for the pain suffered. See *Wichers* v.

*Hatch*, supra, 188–89; *Micalizzi* v. *Stewart*, 181 Conn. App. 671, 685, 188 A.3d 159 (2018); *Cusano* v. *Lajoie*, supra, 178 Conn. App. 611; *Melendez* v. *Deleo*, 159 Conn. App. 414, 418–19, 123 A.3d 80 (2015).

Thus, we conclude that the court's failure to identify the part of the record that supported its conclusion that the jury's failure to award noneconomic damages was unreasonable under the facts of this case was an abuse of discretion. See *Cusano* v. *Lajoie*, supra, 178 Conn. App. 611 ("the court abused its discretion by ordering an additur without identifying the part of the record that supported its determination that an award of [zero] noneconomic damages was unreasonable under the circumstances of this case" (internal quotation marks omitted)).

Furthermore, even if we were to determine that the court sufficiently had identified facts in the record to support its order of additurs, we would be required to review its findings and conclusions in the light most favorable to sustaining the jury's verdict, rather than the court's decision. See id. To determine whether it was reasonable for the jury to have concluded that the plaintiffs proved that they had suffered injuries and incurred reasonable and necessary medical expenses but did not prove that they had suffered compensable pain and suffering, we must undertake the same type of fact intensive analysis articulated by our Supreme Court in *Wichers* v. *Hatch*, supra, 252 Conn. 188–90. "Because in setting aside a verdict the court has deprived a litigant in whose favor the verdict has been rendered of his constitutional right to have disputed issues of fact determined by a jury . . . the court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined. Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand . . . ." (Citation omitted; internal quotation marks omitted.) Id., 189. Thus, we must carefully examine the specific facts and circumstances of the present case to determine whether the jury could have concluded that, although the plaintiffs' economic damages were compensable, they failed to prove that they had suffered noneconomic damages.

In reviewing this issue, our decision in *Cusano* v. *Lajoie*, supra, 178 Conn. App. 605, serves as a useful guide. In *Cusano*, similar to the present case, the plaintiff and the defendants were in a motor vehicle accident in which the defendants' vehicle rear-ended the plaintiff's vehicle. Id., 607. During trial, issues arose regarding conflicting evidence and questions of credibility. See id., 612–13. Specifically, conflicting evidence was presented during trial regarding how much time from work the plaintiff missed because of the accident. Id.,

612. Furthermore, conflicting evidence was presented regarding the pain suffered by the plaintiff and the medical treatment he sought after the accident, including the dates of those treatments. Id., 612–13. This court concluded: "After reviewing the evidence adduced at trial . . . the jury's verdict was within the parameters of fair and reasonable compensation. The jury reasonably could have determined . . . that the plaintiff had not proven any noneconomic damages for pain and suffering . . . ." Id., 613–14.

Similarly, in the present case, conflicting and inconsistent evidence was presented during trial. Here, the jury heard testimony from both Maldonado and Hernandez. Maldonado testified that, while he was approaching a red light in his vehicle, he saw a vehicle approaching quickly from behind and did not have time to move out of the way. Thereafter, during cross-examination, Maldonado testified that during the same incident, he looked back and tried to avoid the approaching vehicle because he thought it was going to collide with his vehicle. Further, Maldonado could not explain why his medical records indicated that he had told his physician that he did not know he was going to be rear-ended. Later, Maldonado admitted that he was involved in a prior motor vehicle accident in April, 2014, that resulted in chest and neck pain. After that accident, he treated with a chiropractor for approximately two months. The medical records introduced as evidence from those treatments demonstrated that up until the 2016 accident, Maldonado continued to suffer low back and neck pain from the 2014 accident.

Also during trial, Maldonado testified that he never went to the hospital after his 2014 accident; however, on cross-examination, after being questioned about hospital records demonstrating X-ray reports postdating the 2014 accident, Maldonado altered his testimony by stating that he did not remember if he went to the hospital. Further, the emergency room record made after the 2016 accident demonstrated that Maldonado last visited the hospital prior to the 2016 accident for "chronic pain/sciatica." He also testified that for approximately fifteen years he had done heavy lifting at his workplace but, after the 2016 accident, he was unable to do so. MRIs ordered early in the course of Maldonado's chiropractic treatment after the 2016 accident revealed degenerative disc disease in his back. Lastly, Lieponis testified via videotaped deposition that Maldonado's cervical arthritic changes were degenerative and preexisted the 2016 accident and that his lumbar changes were degenerative in nature and not traumatically caused by the 2016 accident.

During trial, the jury also heard Hernandez' testimony. Hernandez testified that, in the ten years prior to the 2016 accident, he had been convicted of approximately six felonies, the majority of which were drug

related. When Hernandez was questioned about the specific number of convictions against him, he testified that he did not remember because his memory "is shot." Hernandez further testified that the medical information he provided to his physician may not have been completely accurate because of his memory problems. In regard to back pain that Hernandez alleged he had been experiencing, he testified that, once the treatment with his physician concluded, he did not seek out a new physician. Instead, Hernandez testified that, "out in the street, I would just self-medicate [because] they took my Percocet away. [E]very time I would feel some pain, I would just go to my friends and [they gave] me some of their medications."

Additionally, Hernandez testified that, at the scene of the accident, he was offered medical attention but declined it, and he did not tell his boss, when returning the company van, that he was in an accident or that he was in pain. MRIs of Hernandez' back introduced into evidence demonstrate that he suffered from multilevel disc degeneration and disc extrusions. After reviewing the MRIs, Lieponis opined that the multilevel degenerative changes and extrusions in his back were not traumatic in origin and were unrelated to the 2016 accident.

On the basis of the two verdict forms that the jury submitted to the court at the conclusion of the trial, it is reasonable to conclude that the jury resolved the conflicting evidence by rejecting the plaintiffs' noneconomic damages claims for pain and suffering because the plaintiffs failed to meet their burden of proving their noneconomic damages claims. As our Supreme Court articulated in *Wichers*: "[I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work [its] will." (Internal quotation marks omitted.) *Wichers* v. *Hatch*, supra, 252 Conn. 189.

After reviewing the evidence adduced at trial, we conclude that the jury reasonably could have found that the plaintiffs failed to prove noneconomic damages for pain and suffering caused by the 2016 accident. The jury was not required to believe the plaintiffs' testimony but, instead, could have determined that the plaintiffs lacked credibility. See *Wall System, Inc.* v. *Pompa*, 324 Conn. 718, 741, 154 A.3d 989 (2017) ("if there are inconsistencies in a witness' testimony, [i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony" (internal quotation marks omitted)).

The judgment is reversed and the case is remanded with direction to deny the motion for additurs and to render judgment in accordance with the jury's verdict.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Michael T. Flannery was the owner of the Ford Taurus sedan that Kelly C. Flannery was operating during the accident. "The family car doctrine is a common-law rule providing that, when a motor-car is maintained by the paterfamilias for the general use and convenience of his family, he is liable for the negligence of a member of the family having general authority to drive it, while the car is being used as a family car . . . ." (Internal quotation marks omitted.) *Cima* v. *Sciaretta*, 140 Conn. App. 167, 170 n.3, 58 A.3d 345, cert. denied, 308 Conn. 912, 61 A.3d 532 (2013). We refer in this opinion to Kelly C. Flannery and Michael T. Flannery collectively as the defendants and to Kelly C. Flannery individually as the defendant.

[2] The plaintiffs' complaint consisted of two counts of negligence. Maldonado alleged negligence in count one, and Hernandez alleged negligence in count two.

[3] General Statutes § 52-228a provides in relevant part: "In any jury case where the court orders . . . an increase in the amount of the judgment, the party aggrieved by the . . . additur may appeal as in any civil action. The appeal shall be on the issue of damages only, and judgment shall enter upon the verdict of liability and damages after the issue of damages is decided."

[4] General Statutes § 52-228b provides in relevant part: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. . . . No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

———————————————