******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ERIN C. HASSETT *v.* SECOR'S AUTO CENTER, INC.
(AC 44804)

Cradle, Clark and Harper, Js.

*Syllabus*

The plaintiff appealed to this court from the trial court's denial of her motion for additur, following a jury verdict in her favor on, inter alia, a claim of revocation of acceptance of a used motor vehicle that she had purchased from the defendant car dealership. The plaintiff financed the majority of the vehicle's $25,471.79 purchase price through a loan with the defendant, which was later assigned to a third party that was not made a party to the action. The defendant warranted the vehicle under a limited warranty. Approximately three weeks after the purchase, the plaintiff began experiencing issues with the vehicle. The plaintiff brought the vehicle to the defendant several times to rectify the issues, but the issues continued. After the defendant advised the plaintiff to seek further inspection from another dealership, N Co., the defendant declined to make the additional repairs N Co. had recommended. The plaintiff stopped using the vehicle but continued to make monthly payments. Following a trial, the jury returned a verdict in favor of the plaintiff, including on her claim for revocation of acceptance, and awarded her damages in the amount of $11,000. Subsequently, the plaintiff filed a motion for additur, claiming that the full purchase price of the vehicle should be returned to her, which the trial court denied. On the plaintiff's appeal, *held* that the trial court did not abuse its discretion in denying the plaintiff's motion for additur, as the jury's award of damages fell within the limits of fair and reasonable compensation; moreover, the plaintiff's claim that, pursuant to statute (§ 42a-2-711 (1)), the defendant was required, as a matter of law, to return to her the full purchase price of the vehicle because the jury found in her favor as to her claim of revocation of acceptance was without any support in our jurisprudence, as § 42a-2-711 (1) did not require a refund of the total purchase price when no evidence had been presented showing that such amount actually had been paid, and the plaintiff's claim that financing of the vehicle was equivalent to having paid the defendant in full was also without support; furthermore, the jury determined its damages award on the basis of the evidence presented, which did not establish that the plaintiff had paid the defendant the full purchase price of the vehicle, but, rather, the jury's award reflected that it credited the plaintiff's testimony as to the total amount of payments made on the loan on the vehicle.

Argued May 16—officially released October 4, 2022

*Procedural History*

Action to recover damages for, inter alia, the plaintiff's revocation of acceptance of an allegedly defective motor vehicle, and for other relief, brought to the Superior Court in the judicial district of New London and tried to the jury before *S. Murphy, J.*; verdict in part for the plaintiff; thereafter, the court, *S. Murphy, J.*, denied the plaintiff's motion for additur and rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court. *Affirmed.*

*Sergei Lemberg*, with whom was *Vlad Hirnyk*, for the appellant (plaintiff).

*Sandra R. Stanfield*, with whom were *Victoria S. Mueller* and *Matthew H. Greene*, for the appellee (defendant).

*Opinion*

HARPER, J. In this action arising from the purchase of a used motor vehicle by the plaintiff, Erin C. Hassett, from the defendant, Secor's Auto Center, Inc., a used car dealer, the trial court rendered judgment in accordance with a jury verdict in favor of the plaintiff with respect to four of the five claims set forth in the complaint and awarded the plaintiff $11,000 in damages. On appeal from that judgment, the plaintiff claims that the court improperly denied her motion for additur.[1] We disagree and affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. On November 4, 2017, the plaintiff purchased a used vehicle, a 2010 BMW X6 XDrive 50i, from the defendant. The purchase price for the vehicle was $25,471.79, including sales tax, a dealer conveyance fee, and license and title fees. The plaintiff made a down payment of $2500 by way of a trade-in and financed the remainder of the purchase price. Her monthly payments were $439.14, to be paid over a total of sixty months beginning on December 19, 2017, and she testified that she continued to make those payments through the time of trial. The dealer warranted the vehicle under a limited warranty for 60 days or 3000 miles, whichever came first.[2]

The record reveals that the plaintiff financed $22,971.79, the majority of the purchase price of the vehicle, by way of a loan with the defendant. The defendant subsequently assigned its interest in that loan to Volvo Car Financial Services U.S., LLC (Volvo). The loan between the plaintiff and the defendant provides that the assignee of the loan, Volvo, has a security interest, or lien, on the title of the vehicle.[3] Volvo has not been made a party to this action.

The plaintiff began to experience issues with the vehicle beginning approximately three weeks after purchase. On November 22, 2017, the oil level light came on in the vehicle, indicating that the oil level was low. After she added oil to the engine, she brought the vehicle back to the defendant. The defendant tightened the oil drain plug, cleaned off residual oil, and returned the vehicle to the plaintiff. About one week later, the oil level light came on again. On December 8, 2017, the plaintiff again brought the vehicle to the defendant. The defendant found no evidence of an oil leak and referred the plaintiff to seek further inspection at New Country Motor Cars (New Country) in Hartford.

On December 13, 2017, the plaintiff brought her vehicle to New Country for inspection. New Country found no leaks in the engine but discovered that the vehicle "smokes excessively after idling for a couple minutes" and determined that it would need to replace the "valve seals" and "exhaust on both banks" to rectify the plain-

tiff's oil burning concern. The quoted cost to repair her vehicle was $9200. The plaintiff communicated the quote from New Country to the defendant and requested that the defendant replace the vehicle's engine valve seals. The defendant declined to replace the valve seals on the engine because it claimed that it was not necessary. Subsequently, the plaintiff retained counsel. On December 29, 2017, the plaintiff's counsel sent a letter on her behalf to the defendant seeking to revoke her acceptance of the vehicle and demanding "return of all money paid so far, including the down payment, amount of payments thus far, finance charges, other fees, incidental and consequential damages, costs, and attorney's fees."

On January 3, 2018, the plaintiff brought the vehicle back to the defendant for the third time because the check engine light had come on, and the defendant advised her that the oxygen sensors required replacing. The defendant initially agreed to repair the oxygen sensors but stopped work on the vehicle when it received the letter from the plaintiff's counsel seeking revocation of the plaintiff's acceptance of the vehicle. On January 8, 2018, when the plaintiff picked up the vehicle, the low oil level light again had turned on. In March, 2019, the plaintiff stopped using the vehicle, but continued to make monthly payments. She testified at trial that the vehicle has not run since March 22, 2019, and has been parked in her driveway since then.

The plaintiff filed a complaint against the defendant, with a return of service date of March 6, 2018, alleging six counts sounding in (1) breach of implied warranties under General Statutes § 42a-2-314; (2) breach of written warranties under General Statutes §§ 42a-2-313 and 42a-2-318; (3) breach of written and implied warranties under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq.; (4) revocation of acceptance under General Statutes § 42a-2-608;[4] (5) breach of the obligation of good faith and fair dealing under General Statutes § 42a-1-304; and (6) violation of General Statutes § 42-110b of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. A jury trial was held in March, 2020, and the jury returned its verdict in favor of the plaintiff on all claims except the CUTPA claim. Relevant to this appeal, the jury made a finding that the plaintiff had met her burden of proof with respect to her claim of revocation of acceptance.

With respect to damages relating to the plaintiff's revocation of acceptance claim, the court charged the jury as follows: "If you find that the plaintiff has met her burden of proof on [her] revocation of acceptance claim, then the plaintiff is entitled to a refund of so much of the purchase price as has been paid as well as damages for incidental and consequential expenses. Incidental damages include expenses reasonably

incurred in inspection, receipt, transportation, and care and custody of the vehicle rightfully rejected, and any other reasonable expense incident to the defendant's breach. Consequential damages resulting from the defendant's breach include any loss resulting from general or particular requirements and needs of which the defendant at the time had reason to know and which could not reasonably be prevented by cover or otherwise; and injury to person or property proximately resulting from any breach of warranty. Consequential damages include any loss that may fairly and reasonably be considered as arising naturally, according the usual course of things from such breach.'' The plaintiff's counsel did not object to the court's charge to the jury.

The jury awarded the plaintiff a lump sum of $11,000 in total damages. The special verdict form used by the jury did not include a breakdown of damages; the form stated that the lump sum of $11,000 awarded to the plaintiff included ''damages . . . compensatory, incidental and/or consequential, as applicable . . . .'' No punitive damages were awarded.

On March 17, 2020, the defendant filed a motion to set aside the verdict, which the court denied on December 28, 2020. On March 19, 2020, the plaintiff filed the motion for additur that is the subject of this appeal, asking the court to order that the ownership of the vehicle be transferred back to the defendant and that the full purchase price be returned to the plaintiff. Specifically, the plaintiff argued that, ''upon showing that acceptance was revoked, the court must order [the defendant] to repay [the plaintiff] the purchase price paid. . . . Here, the price paid for the vehicle was $25,471.79. . . . Therefore, based on the jury's verdict, the court must find that, by operation of law, the title to the vehicle revests in [the defendant] . . . and the defendant must refund the plaintiff the purchase price paid of $25,471.79.''

On January 8, 2021, the defendant filed an objection to the plaintiff's motion, arguing that ''a hearing should be [held] regarding the value of the vehicle . . . before the court enters an award on the purchase price, as is requested by the plaintiff. . . . Prior to trial, the defendant filed a motion to compel the plaintiff to have her car inspected, which motion was denied. No testimony was given by the plaintiff regarding the condition of the vehicle with exception of her statement at trial . . . that the vehicle wasn't running. She did not indicate the current mileage of the vehicle, and there is no way of knowing same. These facts should be established before refunding the plaintiff the full purchase price of a vehicle which she still possesses . . . .''

On January 20, 2021, the plaintiff filed a reply to the defendant's objection to her motion for additur, arguing that ''[t]he jury returned a verdict for the plaintiff and against the defendant on the claim for revocation of

acceptance. . . . The jury awarded the plaintiff $11,000 in damages. . . . Here, the price paid for the vehicle was $25,471.79 . . . . Therefore, based on the jury's verdict, the court must find that, by operation of law, the title to the vehicle revests in [the defendant] and the defendant must refund the plaintiff the purchase price paid of $25,471.79.''

On March 30, 2021, the defendant, with leave from the court, submitted a supplemental objection in response to the plaintiff's reply. The defendant argued that the jury's verdict in this case is well supported by the evidence and should be allowed to stand. Specifically, the defendant argued that, ''[i]n the case at hand, it would appear that the jury awarded the plaintiff as damages return of the payments that she had already paid regarding the purchase of her vehicle, which is exactly the law regarding revocation of acceptance. . . . [T]he plaintiff testified and submitted an exhibit, based upon which the jury could have calculated that she made [twenty-five] payments on the vehicle of approximately $440 each, totaling $11,000 in payments made. While the jury was allowed to award incidental and consequential damages, it also did not have to do so. The jury exactly followed the court's instructions and made an award in this case that 'falls somewhere within the necessarily uncertain limits of just damages' and does not indicate that the jury was 'influenced by partiality, prejudice, mistake or corruption,' in which case the verdict must stand. *Wallace* v. *Haddock*, 77 Conn. App. 634, [637, 825 A.2d 148] (2003).'' In addition, the defendant asserted that, ''[b]ecause the plaintiff has not timely sought that the verdict be set aside, the plaintiff is precluded from seeking an additur.'' Finally, the defendant argued that there was no basis for the court to order an additur because ''the plaintiff has given no sound reason to disturb the jury's verdict,'' and that, to the extent the plaintiff was asserting that the verdict was inadequate, ''the law is clear: it is not enough to base an additur on a conclusory statement that a jury award was inadequate.''

On April 20, 2021, the plaintiff submitted a supplemental reply, arguing that ''the jury found for the plaintiff on the revocation claim. The jury need not calculate the amount the plaintiff gets back in a revocation of acceptance claim—the law clearly states [that] the plaintiff gets the purchase price paid and title revests. . . . [T]here is zero dispute as to what the purchase price paid is, because the defendant, in its answer, admitted the purchase price is $25,471.79 . . . . The jury entered [a] verdict for the plaintiff on the revocation of acceptance claim and now, by operation of law, the vehicle title revests in the defendant and the plaintiff takes the purchase price paid, plus incidental and consequential damages as found by the jury.'' (Emphasis omitted.)

Subsequently, on June 8, 2021, the court denied the plaintiff's March 19, 2020 motion for additur and rendered judgment in accordance with the jury's verdict. On June 21, 2021, the plaintiff filed a motion for clarification of the judgment. On August 12, 2021, the court denied the plaintiff's request for clarification, stating: "The jury's verdict clearly set forth the amount of damages due the plaintiff. Further, title to the subject vehicle is appropriately addressed by way of operation of law, in accordance with the General Statutes. Accordingly, a request for clarification of the court's judgment on the verdict is hereby denied." This appeal followed.

On appeal, the plaintiff argues that the court improperly denied her motion for additur. Specifically, the plaintiff contends that she is entitled to a refund of the full purchase price of the vehicle, $25,471.79, as a matter of law, because the jury found in her favor on her claim of revocation. The defendant responds that the court properly exercised its discretion in denying the plaintiff's motion for additur and rendering judgment in accordance with the verdict. We agree with the defendant.

We begin by setting forth the applicable standard of review and governing legal principles. "We review the trial court's decision to deny a motion for additur under an abuse of discretion standard. . . . [I]t is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence." (Citation omitted; internal quotation marks omitted.) *Bligh* v. *Travelers Home & Marine Ins. Co.*, 154 Conn. App. 564, 572, 109 A.3d 481 (2015). "The trial court's refusal to . . . order an additur is entitled to great weight and every reasonable presumption should be given in favor of its correctness. In reviewing the action of the trial court in denying the [motion] for additur . . . our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, mistake or corruption." (Internal quotation marks omitted.) *DeEsso* v. *Litzie*, 172 Conn. App. 787, 795–96, 163 A.3d 55, cert. denied, 326 Conn. 913, 173 A.3d 389 (2017).

Moreover, "[i]t is axiomatic that [t]he amount of damages awarded is a matter peculiarly within the province of the jury . . . . [I]t is the jury's right to accept some, none or all of the evidence presented. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *Cusano* v. *Lajoie*, 178 Conn. App. 605, 609–10, 176 A.3d 1228 (2017).

The plaintiff argues that, because the jury found in her favor as to her claim of revocation of acceptance, the defendant is required, as a matter of law, to return to the plaintiff the full purchase price of the vehicle in the amount of $25,471.79. In support of this argument, the plaintiff principally relies on the language set forth in General Statutes § 42a-2-711 (1), which provides in relevant part that "[w]here the . . . buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract . . . the buyer may cancel and whether or not he has done so may *in addition to recovering so much of the price as has been paid*," recover certain other damages. (Emphasis added.) Moreover, the plaintiff asserts that "[t]he refund of the 'purchase price' to be returned to the plaintiff was not tried to the jury—those damages on the revocation claim were already admitted in the pleadings." Finally, she argues that the amount that the jury awarded, $11,000, "must be interpreted as the award or compensation for [her] consequential and incidental damages only."

In her brief, the plaintiff relies on *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 115, 520 A.2d 162 (1987) (*Barco*), for the proposition that a seller is required "to return the buyer's purchase price in toto when he has delivered nonconforming goods under circumstances that afford a buyer a right to reject or to revoke acceptance.' " The plaintiff's reliance on *Barco*, however, is misplaced. The language in *Barco* on which the plaintiff relies concerns a general principal under the Uniform Commercial Code (UCC) and was referenced by the court while analogizing remedies under the UCC to the statute at issue in *Barco*.[5] Id., 114. There is nothing in our Supreme Court's ruling in *Barco* that requires the defendant in the present case to return the full purchase price of the vehicle to the plaintiff when the evidence in the record shows that she paid only a portion of the full purchase price. In fact, in *Barco*, the buyer was refunded only those amounts actually paid under the contract. Id., 110. The court explained that, "[i]n restoring the parties to their respective positions prior to the contract, courts generally order the seller to refund the amounts paid by the buyer for the goods and the buyer to return the goods to the seller. . . . Accordingly, the

court ordered the plaintiff to refund the sum of $9596.76, representing the amounts paid by the defendants from October 1979, to December, 1981." (Citation omitted.) Id., 113.

In *Conte* v. *Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976), our Supreme Court stated that the UCC, of which § 42a-2-711 is a part, provides a "specific remedy [that] permit[s] a buyer under proper conditions to force the seller to retake nonconforming goods even if the buyer has already accepted them. . . . When a buyer justifiably revokes acceptance, he may cancel *and recover so much of the purchase price as has been paid*." (Citation omitted; emphasis added; footnote omitted.) Id., 119–20. In *Conte*, "[t]he jury could have reasonably concluded that the revocation was timely and justifiable. The plaintiff was, therefore, *entitled to recover the amount of the purchase price which he had already paid*." (Emphasis added.) Id., 123. Unlike in the present case, in *Conte* "[t]here was evidence from which the jury could reasonably have found . . . [that the plaintiff] paid [the defendant] the total purchase price for the automobile." Id., 116.

In the present case, the plaintiff's argument that she is entitled to the full purchase price of the vehicle is without any support in our jurisprudence. The plaintiff's assertion, essentially, is that the phrase "as has been paid" set forth in § 42a-2-711 should apply to the total purchase price of the vehicle, without requiring her to provide *any* evidence in the record that she has paid the total purchase price for the vehicle. The record reveals that the plaintiff financed the majority of the purchase price through a loan with the defendant. The plaintiff presumes that financing of the vehicle is equivalent to having "paid" the defendant in full. We have found no support for this proposition in our decisional law. The defendant subsequently assigned to Volvo its interest in the loan, which provides that the assignee of the contract, Volvo, has a security interest, or lien, on the title of the vehicle.[6]

In *Micalizzi* v. *Stewart*, 181 Conn. App. 671, 676, 188 A.3d 159 (2018), the plaintiff argued on appeal that the court should have set aside the verdict because the jury's award of damages conflicted with its answers to the interrogatories on a special verdict form. "Only if a court cannot harmonize the verdict and the interrogatories may it refuse to accept such verdict. . . . A verdict is not defective as a matter of law as long as it contains an intelligible finding so that its meaning is clear. . . . A verdict will be deemed intelligible if it clearly manifests the intent of the jury." (Citation omitted; internal quotation marks omitted.) Id., 677. In *Micalizzi*, this court looked to the trial court's jury instructions to contextualize the jury's answers to the interrogatories. Id., 680. In the present case, we similarly must look to the court's charge to the jury to put

the damages award in context. In the present case, the jury was instructed that, "[i]f you find that the plaintiff has met her burden of proof on a revocation of acceptance claim then [the] plaintiff is entitled to a refund of so much of the purchase price as has been paid as well as damages for incidental and consequential expenses." The instruction from the court was clear: the jury had to base its award of damages on the portion of the $25,471.79 purchase price paid for by the plaintiff, *as well as* any other incidental or consequential damages it found were warranted.

The plaintiff contends that because the purchase price of the vehicle was admitted to in the pleadings, she is entitled to a refund of that amount as a matter of law, and, as such, the issue of how much of the purchase price "has been paid" was not a question before the jury to decide. We disagree. As we already have determined, § 42a-2-711 does not require a refund of the total purchase price as a matter of law, especially when no evidence has been presented showing that such amount actually had been paid. Under the statute, the plaintiff is entitled to "so much of the price as has been paid . . . ." General Statutes § 42a-2-711. The jury had to determine that amount on the basis of the evidence presented, which did not establish that the plaintiff paid the defendant the full purchase price of the vehicle.[7]

The jury ultimately awarded the plaintiff $11,000 in total damages. This amount roughly equates to the plaintiff's monthly payment, $439.14, multiplied by the number of payments she made between December 19, 2017, and the time of trial in March, 2020. The jury credited the plaintiff's testimony, as evidenced by its damages award. Accordingly, because the jury's award of damages falls within the limits of fair and reasonable compensation in this particular case; see *Cusano* v. *Lajoie*, supra, 178 Conn. App. 609–10; we cannot say that the trial court abused its discretion in denying the plaintiff's motion for additur.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff's motion was titled, "Plaintiff's Motion for Judgment in Accordance with the Verdict or, in Alternative, Motion for Additur." Notwithstanding the plaintiff's characterization of the motion, "[t]he nature of a motion . . . is not determined by its title alone. . . . [W]e are not bound by the characterizations of a motion by the movant or by the trial court." (Citation omitted; internal quotation marks omitted.) *Silver* v. *Silver*, 200 Conn. App. 505, 520, 238 A.3d 823, cert. denied, 335 Conn. 973, 240 A.3d 1055 (2020). "[W]e look to the substance of the relief sought by the motion rather than the form." *In re Haley B.*, 262 Conn. 406, 413, 815 A.2d 113 (2003). Because the court did, in fact, render judgment in accordance with the jury's verdict—that is, in favor of the plaintiff—we discern the substance of the plaintiff's motion, which concerns the amount of damages due the plaintiff, to be a motion for additur. Accordingly, we treat it as such.

[2] Specifically, the warranty covered the following: "The dealer will pay 100 [percent] of the labor and 100 [percent] of the parts for the covered systems that fail during the warranty period." The covered parts include the engine, including "[a]ll internally lubricated parts, fuel pump and water

pump, block, heads and manifolds, harmonic balancer, fuel injectors, carburetor, turbo charger and engine mounts."

[3] The loan document, entered into evidence at trial, makes reference to the "[s]eller's agreement(s) with [a]ssignee." That agreement does not appear to be in the record.

[4] In its charge to the jury, the court instructed the jury that the plaintiff "claims revocation of acceptance pursuant to . . . [§] 42a-2-608." The fourth count of the plaintiff's complaint, however, was titled: "Revocation of acceptance pursuant to [General Statutes] § 42a-2-314." Although the plaintiff cited the incorrect statute in the fourth count of the complaint, we understand her claim to be one of revocation of acceptance of her vehicle under § 42a-2-608. See *McLeod* v. *A Better Way Wholesale Autos, Inc.*, 177 Conn. App. 423, 444–45, 172 A.3d 802 (2017) ("The interpretation of pleadings is always a question of law for the court . . . . [W]e long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.)); see also *Burton* v. *Stamford*, 115 Conn. App. 47, 65–66, 971 A.2d 739, cert. denied, 293 Conn. 912, 978 A.2d 1108 (2009).

[5] Other cases cited by the plaintiff are similarly unavailing, as they simply state the boiler plate language of the statute. In fact, the plaintiff cites to a case that directly contradicts her argument. In *Alexis* v. *PMM Enterprises, LCC*, Docket No. 3:17-cv-1622 (MPS) (D. Conn. October 29, 2018), the court explicitly did not award the purchaser the full price of a vehicle upon successfully showing revocation. Rather, the court stated: "Even assuming they made every payment from the time they entered the contract until they revoked their acceptance of the vehicle, the total due was only $5487.30. . . . [N]either the complaint nor the affidavits in support of default judgment state that the [plaintiffs] made all payments in accordance with the contract. . . . Here, the actual damages alleged in the complaint exceed the damages supported in the affidavits and documents. The [plaintiffs] do not provide a basis from which [the court] could reasonably infer that they made weekly payments under the contract." (Footnote omitted.).

[6] "[A]n assignor typically can transfer his contractual right to receive future payments to an assignee." *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 268, 757 A.2d 526 (2000).

[7] We note that, although the plaintiff claims that she continues to make her monthly payments to the defendant, Volvo is the assignee of the loan. The plaintiff, thus, should have made Volvo a party to this action in order to challenge any future payments owed on the loan.

General Statutes § 52-572g (a) provides in relevant part: "Any holder in due course of a promissory note, contract or other instrument, other than an instrument issued in connection with a credit card transaction, evidencing an indebtedness, signed or executed by a buyer in connection with a credit transaction covering consumer goods . . . shall be subject to all of the claims and defenses which the buyer has against the seller arising out of the transaction or against the person or persons providing the services, limited to the amount of indebtedness then outstanding in connection with the credit transaction, provided the buyer shall have made a prior written demand on the seller with respect to the transaction."

Our Supreme Court recently explored the legislative history of § 52-572g (a) in *Hernandez* v. *Apple Auto Wholesalers of Waterbury, LLC*, 338 Conn. 803, 259 A.3d 1157 (2021). In explaining the legislative history, the court stated that the "holder in due course doctrine . . . generally arose when a consumer finances the purchase of goods or services through a retail installment contract or other instrument arranged by the seller, which is later assigned to a bank or other finance company. . . . If the product turns out to be a lemon, is damaged or needs servicing under a warranty and the seller refuses to take whatever action is indicated, the finance company or bank has no responsibility to make good [on the contract]. If the buyer refuses to make payments as they [become] due, the [finance company] may repossess the . . . goods or the buyer may be dunned for the entire balance of the loan, payable immediately." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 816–18.

Section 52-572g (a) rectifies this issue by subjecting an assignee "of consumer credit contracts to all the claims and defenses that the consumer would have against the seller." Id., 818. Our Supreme Court determined that

an assignees' liability is limited to the amount of indebtedness outstanding when the written demand is made on the seller. Id., 821.

———————————————